Darrell TULLOCK, Plaintiff,

v.

**CITY OF ST. CHARLES, Mo.,**
**Defendant.**

No. 41796.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 8, 1980.

Whalen, O'Connor, Danis & Tobben, John C. Livingston, St. Louis, for plaintiff.

Ellsworth Cundiff, Jr., St. Charles, for defendant.

SMITH, Presiding Judge.

The City of St. Charles appeals from the action of the Circuit Court setting aside the action of the City Council of St. Charles reducing Tullock from the rank of sergeant to the rank of patrolman in the St. Charles police department.

Tullock's original demotion was made by the mayor of St. Charles on three bases: (1) Tullock had, contrary to city ordinance, accepted outside employment without the *written* consent of the police chief,[1] (2) Tullock had "further violated [his] oath of office, in that [he had] failed to obey the laws of the State of Missouri,"[2] (3) Tullock had violated an article of the police manual by fraternizing or having business transactions with known criminals or persons engaged in unlawful activities.[3] Tullock sought, through his attorney, a more specific statement of his misconduct causing his demotion. This was not supplied. The lack of specificity was not thereafter preserved and is not before us. Pursuant to the ordinances of the city Tullock then appealed his demotion to the Police and Fire Personnel Board, which held an adversary hearing and recommended that the demotion be sustained. This was done by the City Council. Tullock then filed a petition for review in the Circuit Court, which set aside the demotion because of a denial of due process to Tullock by the Board. We affirm.

The specific cause for the trial court's action involves what is referred to by all parties as the "Ryan report." This was an investigation of corruption within the St. Charles police department conducted by Brendan Ryan, formerly circuit attorney for the City of St. Louis. In his letter to the mayor requesting a more specific statement of the charges Tullock's counsel requested a copy of the Ryan report "wherein certain allegations are alleged to have been made against my client." This request was not honored. Prior to the hearing, Tullock sought a subpoena duces tecum directed to the Mayor to produce "Any and all records and material pertaining to Darrell Tullock, including but not limited to his personnel file and any report or reports submitted to you by any person, including but not limited to that of Brendan Ryan and/or David Fischer, the nature of which would be relevant to the performance of Darrell Tullock in his capacity as a police officer." The request for the subpoena was denied by the Chairman of the Board. Tullock then filed a petition for a writ of mandamus with the Circuit Court to compel issuance of the subpoena. This petition was not ruled on until after the Board hearing; it was then denied. At the end of the hearing Tullock's counsel inquired whether any members of the Board had read the Ryan report. Two of the four members including the Chairman, stated they had "seen" the report. The Ryan report was not a part of the record of the Board hearing or the Circuit Court proceeding, nor is it before this court.

The Board recommendation was based upon three areas of alleged misconduct. The first was that Tullock obtained only *oral* permission for outside employment from the Chief of Police. The evidence was, and the Board acknowledged, that this was the normal procedure for police officers at the time of Tullock's conduct and was accepted as proper by the then chief. The second misconduct (elicited solely on cross-examination of Tullock and mentioned at no other time including during the City's opening statement) was that Tullock had possessed a pistol given to him by another officer for which no permit could be obtained because the serial numbers had been obliterated. When he found he could not obtain a permit he gave the pistol to another police officer. The Board found the possession was in violation of Sec. 571.130 R.S. Mo.1978 (then 564.640) and that in giving the pistol away Tullock violated Sec. 571.-125 R.S.Mo.1978 (then 564.630).[4] The third finding of misconduct by the Board was that Tullock allowed a Mr. Schulte to store on Tullock's farm automobiles towed by Schulte's towing service. Schulte, 17 at the time, had been previously arrested by Tullock as a juvenile and was also used as an

1. No outside employment was specified.

2. No law was specified.

3. No "known criminals or persons engaged in unlawful activities" were specified.

4. The only violation of Missouri law referred to in the city's opening statement was a violation of Sec. 417.210 R.S.Mo.1978, the Fictitious Name Act. The Board made no finding that Tullock violated this statute.

informant by him. Tullock testified that he believed that Schulte had rehabilitated himself as evidenced by his starting the towing business and that he, Tullock, was attempting to help Schulte in his business. When Tullock found out that some of the automobiles were stolen, he arrested Schulte. We make no finding on the sufficiency of the evidence to sustain the determinations of the Board.

Tullock contends, and the trial court found, that Tullock was denied due process of law by the Board because at least two members of the Board had seen the Ryan report, that that report may have contained information detrimental to Tullock and that Tullock was denied any opportunity to see the report and rebut any adverse information therein contained. The City attacks the trial court's findings by treating the seeing of the report by the Board members and the denial of Tullock's subpoena request as two independent and unrelated legal matters. It then justifies each as proper. We do not believe the matters can be so separated. The vice of the procedure is not that the Board saw the report nor is it that the subpoena request was denied. The denial of due process occurred because half of the fact finding body had seen material apparently involving Tullock which he was denied access to and which he could not rebut.

*Morgan v. United States,* 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938) establishes that administrative agencies must as a matter of due process provide a fair and open hearing when they deal with the liberty and property of the citizen.

"The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be a barren one." l.c. 18, 58 S.Ct. 776.

■ Although *Morgan, supra,* is an administrative regulation case the doctrine of a "fair hearing" is equally applicable to hearings involving personnel or disciplinary matters. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In that case the Court found no violation of due process where the examining board which conducted an investigatory proceeding to determine whether an adversary disciplinary proceeding should be held was also the body which heard and determined the disciplinary proceeding.[5] The Court, however, specifically noted that the doctor being disciplined was allowed to be present throughout the investigatory hearing and knew all the facts which were presented to the Board. It is clear from *Simmons v. United States,* 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); *Gonzales v. United States,* 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955); and *Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) that it is a violation of due process for the factfinder to have before it evidence or reports concerning the person or subject matter upon which it must pass judgment, if such evidence or reports are not made available to all the parties to the proceeding. *See also, Pacific Live Stock Co. v. Lewis,* 241 U.S. 440, l.c. 453, 36 S.Ct. 637, 643, 60 L.Ed. 1084 (1916).

Sec. 536.140 R.S.Mo.1978 provides that on judicial review of a contested administrative proceeding the court may determine whether the agency ruling is made upon unlawful procedure or without a fair trial. In *Jones v. State Dept. of Public Health and Welfare,* 354 S.W.2d 37 (Mo.App.1962) the court defined "fair hearing" in very nearly the same terms as did *Morgan v. United States, supra.*

"An administrative proceeding will not be considered a 'fair hearing' if it lacks the rudimentary elements of 'fair play' embraced within the requirements of due process. . . . It cannot be said that there has been a 'fair hearing' if practices

**5.** *See also Rose v. State Board of Registration For the Healing Arts,* 397 S.W.2d 570 (Mo. 1965).

are indulged in or the hearing is conducted in a manner leading to the conclusion that a denial of justice may have resulted." l.c. [2, 3, 354 S.W.2d 39–40].

 It was a denial of a fair hearing and therefore of due process, for the Board or any of its members to have read the Ryan report if it contained material adverse to Tullock and to deny him the opportunity to see the report and rebut the material therein.

The City argues that the use of the word "seen" by the Board members means something different than "read" and does not allow an inference that the members were aware of the contents of the report. We disagree. The question asked was whether the members had read the report. Two members, in answer to that question, said they had "seen" it. One further indicated that he had not, however, "seen" the support evidence. We believe it reasonable to conclude that the members utilized "seen" as a synonym for "read"—a not uncommon usage.

The Board further argues that *Cox v. McNeal*, 577 S.W.2d 881 (Mo.App.1979) justifies the denial of the subpoena duces tecum here. As we have indicated, the denial of the subpoena cannot be treated in a vacuum. Furthermore, *Cox v. McNeal, supra*, dealt only with the availability of certain internal investigatory material to the police officer involved in the disciplinary proceeding. There was no contention in that case that the Board had the material available to it or that any board member had "seen" or "read" the reports. The issue presented is not the same.

Finally the City contends that Tullock has failed to establish prejudice. The immediate question raised is—How could he? The secret material was never made available to him nor to the Circuit Court nor to us. The report dealt with corruption in the St. Charles City police department of which Tullock was a member. The report was authored by the attorney representing the City in Tullock's hearing before the Board. The Chief of Police during the alleged misconduct of Tullock had been fired either contemporaneously with the preparation of the Ryan report or after its preparation. At least one police officer who testified in Tullock's behalf had been reduced in rank sometime before the hearing. The City makes no contention that the Ryan Report is silent about Tullock. If the report was not prejudicial to Tullock only the City was in a position to show that. It has failed to do so. Tullock repeatedly attempted to obtain the report and was repeatedly denied access thereto, on one occasion by the Chairman of the Board who was one of the members who had "seen" the report. We find no error in the trial court's findings and conclusions.

Judgment affirmed.

SATZ and SIMON, JJ., concur.