**STATE of Missouri, Respondent,**

**v.**

**Michael E. LITTERELL, Appellant.**

**No. WD 42465.**

Missouri Court of Appeals, Western District.

Oct. 9, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1990.

Application to Transfer Denied Jan. 9, 1991.

John E. Redmond, Kansas City, for appellant.

Donald E. Reynolds, Pros. Atty., Rock Port, for respondent.

Before SHANGLER, P.J., and CLARK and BERREY, JJ.

SHANGLER, Presiding Judge.

The defendant Litterell was convicted of driving while intoxicated in violation of § 577.010, RSMo 1986, and was sentenced to 30 days in the county jail and a fine of $300.

On this appeal Litterell contends for a judgment of acquittal on grounds that the evidence failed to prove, prima facie, that he was driving while intoxicated within the meaning of the statute, and that the arrest was made within the time limitation imposed by § 577.039, RSMo 1986. We determine that the evidence was sufficient to prove a violation of § 577.010 and that the conviction comported with the scheme of § 577.039.

Litterell was arrested for driving while intoxicated by Trooper Miller who came to the scene in response to a report of a motor vehicle accident at the 102 mile marker of I–29. En route, he was informed by the sheriff that there was a car between the bridges and the person was armed. When he approached the 102 mile marker, two tractor-trailer drivers pulling away from the scene told the trooper that the man had a gun. When he arrived at the bridges by the marker, the trooper could not see the vehicle from the roadway. It was 12:49 a.m., and dark, so the trooper parked by the bridge, flashed a light, and saw a car and Litterell, who was rummaging around in the back seat of the vehicle. The trooper directed him to come up and deliver the weapons, and Litterell complied.

The trooper placed Litterell in the patrol car, and because he gave off a strong odor of alcohol, the trooper asked Litterell if he had been drinking. He responded that he had and the trooper requested Litterell to perform some field sobriety tests. The trooper formed an opinion that Litterell was intoxicated. The time was 1:07 a.m. A breathalyzer test was administered and the result verified a .12 percent blood alcohol content.

The trooper then interrogated Litterell and elicited these essential responses:

Q. [W]ere you operating this vehicle?
A. I'm going to say no, you know I was, but there wasn't no witnesses.
Q. Where did you start from?
A. From Watson.
Q. When did you leave?
A. God, I don't know.
Q. Had you been drinking?
A. Yes.
Q. What?
A. Mixed drinks.
Q. How much?
A. Four.

He answered the trooper that he started drinking on the previous night [January 25, 1989] at 7:00 p.m. and stopped at 9:30 p.m. that same night.

The trooper then took measurements at the accident scene and found tracks totalling 930 feet in the median between the southbound and northbound lanes of I–29 down the embankment into the creek where the car came to rest. The arrest was made at 1:07 a.m. on January 26, 1989, some three and one-half hours after Litterell had stopped drinking. There was no evidence when Litterell started to drive the car from Watson or at what hour the car came to rest in the creek.

Litterell argues that the evidence does not allow the inferences necessary for conviction—that he was driving while intoxicated or that the arrest was accomplished within one and one-half hours of such a violation.

Indeed *driving,* as used in driving while intoxicated, § 577.010, means "physically driving or operating or being in actual physical control of a motor vehicle." § 577.010; *State v. O'Toole,* 673 S.W.2d 25, 27[3,4] (Mo. banc 1984). When the trooper came upon Litterell he was not driving or operating, or in actual physical control of the vehicle. There is no doubt nevertheless that Litterell started to drive from Watson after he had stopped drinking. His response, "you know I was", to the inquiry of

the trooper, "were you operating this motor vehicle," can only be understood as an acknowledgment that Litterell was still driving the motor vehicle at the time it crossed the travel lanes of the highway over the embankment and into the creek.

When the officer arrived, Litterell reeked of alcohol on the breath, and from the performance of the sobriety tests, the trooper formed the opinion that Litterell was intoxicated. The breath test administered some forty or so minutes later verified a .12 percent blood alcohol content. It was a fair inference from the remote site of the single-driver accident and from the glimpses into the car interior by the trooper that there was no ready access to alcoholic drink to Litterell from the time the car left the highway until he was found by the trooper. It was an inference; therefore, that Litterell had become intoxicated before the car came to rest in the creekbed. That evidence sufficed to prove the conviction for driving while intoxicated under § 577.010. *State v. Klimpt,* 744 S.W.2d 499, 501[3] (Mo.App.1988).

Litterell contends that the statements of the accused alone without independent proof of the essential corpus delicti are not competent and so inadmissible as evidence of the substantive offense. The corpus delicti entails proof of a loss or injury brought about by criminal agency. It is not essential to that proof that the defendant be shown as the criminal agent of the crime charged. *State v. Friesen,* 725 S.W.2d 638, 639[1-3] (Mo.App.1987). That is to say, evidence that the defendant was the criminal agent is not a prerequisite to the admission of his statements or confession into evidence. *State v. Wood,* 596 S.W.2d 394, 402[16] (Mo. banc 1980). The substantive offense is sufficiently proven by independent evidence of circumstances that correspond and interrelate with the circumstances rendered in the statement or confession. *State v. Friesen,* 725 S.W.2d at 639[4]; *State v. Klimpt,* 744 S.W.2d at 500[1,2].

The corpus delicti of the driving while intoxicated under § 577.010 is proven by evidence that someone operated the motor vehicle while intoxicated. The automobile when found by the trooper had crossed from the southbound over the median and the northbound lanes of the interstate and then over the shoulder into the creekbed, where it came to rest. It marked its course by 930 feet of tracks. Although the car was unoccupied when the trooper arrived, Litterell was going through the guns and accoutrements on the rear seat of the vehicle, and when directed by the trooper to surrender the weapons, brought them to him. These were antics of dominion and proprietorship over both the car and its contents and, as such, were circumstances of proof—conformably with the statement—that Litterell was the operator of the vehicle. The strong odor of alcohol from Litterell that met the trooper at their first encounter, and his inability to perform the field sobriety tests, constituted independent corroboration of the statements given to the trooper that Litterell had been drinking until a few hours before. The corpus delicti was properly proven, as was the substantive offense.

Litterell contends also that the admission of the blood alcohol breath test was improper as without foundation since there lacked proof of compliance with Department of Health State Regulations under Mo. Code Regs. tit. 19, § 20-30.031(3) (1989). That regulation requires that a Type II permittee perform maintenance checks on breath analyzers subject to its supervision "at intervals not to exceed thirty-five days." *Id.* The breathalyzer test was administered to Litterell on January 26, 1989. It was the testimony of Type II permittee Trooper Elder that he inspected the BAC Verifier on December 1, 1988, then on January 26, 1989 [56 days later], and then on February 8, 1989. The witness gave opinion that the instrument was operating within specified tolerances on those inspections.[1] The defendant objected,

1. For some reason only the inspection reports of December 1, 1988 and February 8, 1989, were presented and received in evidence. Litterell did not file those exhibits with the court on appeal, so that their contents are not known to us. The opinion of the permittee, that on those

nevertheless, that absent evidence by the prosecution that the breathalyzer equipment "underwent maintenance checks at intervals not to exceed 35 days", the foundation for the admission of the test results was not made. The lapse of 56 days between the inspections of December 1, 1988 and January 26, 1990, the argument goes, invalidated the test result as evidence.

It was the testimony of the permittee Trooper Elder that the regulation was understood to require that "maintenance be done at least once within 35 days of any given breath test." And the machine was inspected on the very day prior to its application to Litterell. The defendant seems to argue that only a record of successive inspections of a machine, at least once every thirty-five days, from the inception of its service or repair can validate a test result.

It is established by our precedents that a prima facie foundation for the admission of a breathalyzer test result is made by evidence that the test was performed by a certified operator in accordance with operating procedures approved by the Division of Health on equipment approved by the division. *Stuhr v. Director of Revenue,* 766 S.W.2d 446, 449[2] (Mo. banc 1989). An affirmative showing that the equipment worked properly on the date of its use is not an element of that prima facie proof. *Collins v. Director of Revenue,* 691 S.W.2d 246, 253[18] (Mo. banc 1985). It is self-evident, of course, that even fastidious observance of the approved testing procedures cannot overcome a fault in the testing device itself. The purpose of the regulation that a certified permittee perform maintenance checks on the breath analyzers "at intervals not less than thirty-five days" is to ensure the reliability of the BAC Verifier at the time the test is administered. Our law assumes nevertheless the integrity of the machine when used to test, so that a contention that the machine was not then in proper operating condition can only be validly made by some evidence that suggests that " 'a malfunction occurred despite adherence by the testing officer to correct methods.' " *Id.; State v. Bush,* 595 S.W.2d 386, 389[6,7] (Mo.App.1980); *Jannett v. King,* 687 S.W.2d 252, 254[1–4] (Mo. App.1985).[2]

There is no contention of malfunction here. There is only contention that the lapse of more than thirty-five days between the inspections of December 1, 1988 and January 26, 1989—the very day the test was given—undermined the admissibility of the result. Taken on its own terms, the argument has no force. Given that the purpose of the regulation is to confirm that the device functions properly at the time the test is administered, there can be no more cogent proof of its integrity than an inspection contemporaneous with the test. Nor is there any contention before us that the operator who administered the verifier neglected the techniques and methods approved for the purpose.[3] The test result was properly received in evidence.

inspections the equipment was operating within specified tolerances, was already before the court, although a subsequent inquiry by the prosecutor that elicited a like response was disallowed by the form of the question.

2. A recent decision of the Eastern District, *Woodall v. Director of Revenue,* 795 S.W.2d 419 (Mo.App.1990) finds that the "failure to conduct a maintenance check within thirty-five days" as provided by Mo. Code Regs. tit. 19, § 20-30.031(3) (1989) even in the absence of evidence of malfunction, renders a test result inadmissible. The facts of that decision are not given, so that the context of the rationale is not evident. In any event, the opinion considers neither *Collins v. Director of Revenue,* 691 S.W.2d 246 (Mo. banc 1985), nor the line of precedents that follows the principle that the operating condition of the machine becomes an issue only on evidence that a malfunction occurred despite adherence by the permittee to the prescribed test methods.

3. Litterell attempts a point in the brief that the printout of the test by the verifier recorded a date of January 26, 1988, instead of the actual date—January 26, 1989 but that permittee Trooper Miller did not correct the date, as the operational check list prescribed. That failure in procedure, the argument goes, deprived the test result of proper foundation for admissibility. The point was not raised in the motion for new trial and so is not before us for review. *McConnell v. Pic-Walsh Freight Co.,* 432 S.W.2d 292, 301[17] (Mo.1968). It is otherwise without merit. The fact that the operator overlooked to reset the date on the machine is irrelevant to its proper functioning. *Stuhr v. Director of Revenue,* 766 S.W.2d 446, 449[3,4] (Mo. banc 1989).

Litterell contends, finally, that the failure of the prosecution to prove that the arrest without a warrant by the trooper was made within one and one-half hours after the violation occurred, as provided in § 577.039, invalidates the conviction under § 577.010.[4] It is a contention that the proviso of § 577.039 constitutes an element of the substantive offense defined in § 577.010. It is a contention also that it is an element of proof for which the prosecution bears the risk of non-persuasion. It is a usual guide to the interpretation of criminal statutes that when an exception is part of the section that defines the offense and constitutes part of the description of the offense, the burden is on the prosecution to plead and prove that the defendant is not within the exception. But where the exception or proviso is found in a separate clause or part of the statute disconnected from the definition of the offense, the exception is not for the prosecution to negate, but for the defendant to claim as a matter of affirmative defense. *State v. Brown,* 306 Mo. 532, 267 S.W. 864, 865[2–3] (1924); *State v. Zammar,* 305 S.W.2d 441, 444[5] (Mo.1957); 1 C. Torcia, *Wharton's Criminal Evidence* § 20 (13th ed. 1972). An exception found in the definition of offense may nevertheless be regarded as a matter of defense, and not of negative proof for the prosecution, where the evidence concerning the subject is peculiarly within the knowledge of the defendant to justify or excuse. 1 C. Torcia, *Wharton's Criminal Evidence* § 20, p. 33 (13th ed. 1972); *State v. Zehnder,* 182 Mo.App. 176, 168 S.W. 666, 667[5] (1914).

The proviso of § 577.039, which Litterell contends imposes on the prosecution the burden to prove that the warrantless arrest was made within one and one-half hours of the violation in order to prove a conviction under § 577.010, is a separate clause in a separate statute from that which enacts and defines the substantive offense. The facts to prove that exceptive proviso, moreover, are peculiarly within the knowledge and private control of the person charged with offense under § 577.010. On these principles, it was for the defendant Litterell to offer evidence on the exceptive facts.

The crime charged by § 577.010 is a code offense. The Criminal Code has formally reordered and, in instances, modified these general principles of criminal liability and defense. It uses not only the terminology *affirmative defense* [§ 556.056], but also *burden of injecting the issue* [§ 556.051] to shift the burden of the production of evidence. The difference between an affirmative defense and the burden of injecting the issue is that as to the first, the risk of non-persuasion rests on the defendant, whereas to the second, it remains on the prosecution. *See* The New Missouri Criminal Code: A Manual For Court Related Personnel § 1.12 (1978) (Comments). The code, however, does not deal directly with when a proviso, separate from the definition of the crime, relaxes the burden on the prosecution to the extent that the defendant must prove the exception as an affirmative defense, rather than simply by injecting the issue.

The few affirmative defenses included in the Criminal Code involve excuse or justification, although not all types of justification are affirmative defenses in the code. *See,* The New Missouri Criminal Code: A Manual For Court Related Personnel § 1.12 (1978) (Comments). *See, e.g., State v. Fincher,* 655 S.W.2d 54, 57–58[1] (Mo. App.1983) (issue of self-defense is not an affirmative defense). That the warrantless arrest of Litterell was or was not within one and one-half hours of the violation does not bear on the criminality of the conduct alleged against him or involve a matter of excuse or justification of that conduct. It

4. Section 577.010 creates the substantive offense of driving while intoxicated. Section 577.039 provides:

> An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of §§ 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated this section ... *provided, however, that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred.*

bears only on the lawfulness of the arrest for that conduct. It suffices under the rationale of the code that Litterell inject the issue by evidence that the arrest occurred more than one and one-half hours of the claimed violation. There was no evidence on that issue, therefore the issue was not submissible to the trier of fact.

There are, of course, constitutional limitations on a burden a criminal defendant is required to assume. A court may not compel a defendant to compulsory self-incrimination or otherwise unfairly shift the burden of proof, even when the defendant has special access to the information needed for exculpation. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1974); *State v. Commenos,* 461 S.W.2d 9, 13[3] (Mo. banc 1970). The evidence Litterell was called upon to adduce in order to inject the issue of exemption from arrest—and hence prosecution—under the proviso of § 577.039, was not that he was last driving while intoxicated more than one and one-half hours before the arrest, but only that he was driving. It is not unfair to require a defendant to inject the issue of exemption from prosecution under the proviso of § 577.039.

In the decision from this court Litterell cites, *Collette v. Director of Revenue,* 717 S.W.2d 551 (Mo.App.1986), the issue of the application of the proviso of § 577.039 was injected into the case by evidence, and so a dismissal for want of arrest within one and one-half hours was before the trier of fact. Here, there was no evidence of the hour when the Litterell car ceased operation on the highway, and hence no basis in fact for exculpation under the proviso.

The judgment of conviction is affirmed.

All concur.