Michael John SELLENRIEK,
Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Richard Paul BERNDT, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Donald A. KINKEADE, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Stephen A. LINTON, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Gerard MORALES, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Katherine N. HARTMAN, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

Michael C. DUNAWAY, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. 74204.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1992.
As Modified March 24, 1992.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Van M. Pounds, Asst. Attys. Gen., Jefferson City, for appellant.

Timothy F. Devereux, Clayton, Charles H. Billings, Mary P. Schroeder, St. Louis, for respondent.

HOLSTEIN, Judge.

This is the consolidated appeal of seven cases. In each, a petition was filed in the circuit court seeking *de novo* review of the Department of Revenue's suspension of driving privileges pursuant to § *302.500, et seq.*.[1] In each case the license was ordered reinstated. The Director of the Department of Revenue (Director) appealed. After opinion by the Missouri Court of Appeals, Eastern District, the case was transferred to this Court to resolve a perceived conflict between opinions by two districts of the court of appeals. Even though this Court addresses the issue raised on appeal, it is impossible to dispose of any of the cases on the record presented. Accordingly, all are reversed and remanded for hearing and judgment consistent with this opinion.

The Department of Revenue is required to suspend a person's driver's license "upon its determination that the person was arrested upon probable cause to believe he was driving a motor vehicle while the alcohol concentration in the person's blood or breath was thirteen-hundredths of one percent or more by weight of alcohol in his blood...." § *302.505.1.* The suspension process is begun when the arresting officer files a mandatory, verified intoxication report. § *302.510.1.* One who has received notice of the suspension may request a hearing by the Department of Revenue. At that hearing the Department of Revenue has the burden of proving by a preponderance of the evidence that the driver was arrested upon probable cause to believe that the person was driving a motor

vehicle with a blood alcohol concentration of .13 percent by weight or more. § *302.530.4; Strode v. Director of Revenue*, 724 S.W.2d 245, 248 (Mo. banc 1987). If aggrieved, the person may file a petition for *trial de novo* in the circuit court. The Department of Revenue again has the burden of proof on the issues presented. § *302.535.1.*

In each of the seven cases now under consideration, petitions for *trial de novo* were filed in the circuit court. In six of those cases, evidence was presented either by testimony or by stipulation of the parties that probable cause existed to arrest the petitioner and that the petitioner had a blood alcohol content of .13 percent or greater. In the seventh case, *Dunaway v. Director of Revenue*, there is neither a transcript nor a stipulation indicating what the evidence was. In each of the seven cases, the trial court made reference in its order reinstating the petitioner's driving privileges to *Woodall v. Director of Revenue*, 795 S.W.2d 419 (Mo.App.1990). There the Court of Appeals, Eastern District, discussed the foundation necessary to admit a blood alcohol concentration verifier reading in evidence.

The puzzling part about the record in six of the cases is that evidence was admitted without objection or it was stipulated that the petitioner's blood alcohol content was .13 percent or greater. When evidence of one of the issues in the case is admitted without objection, the party against whom it is offered waives any objection to the evidence, and it may be properly considered even if the evidence would be excluded by a proper objection. *Appelhans v. Goldman*, 349 S.W.2d 204, 207 (Mo.1961). Similarly, where the results of a breathalyzer test are stipulated, a party may not complain that the breathalyzer test was improperly admitted in evidence. *State v. Gist*, 800 S.W.2d 94, 95 (Mo.App. 1990); *see also Cox v. McNeal*, 577 S.W.2d 881, 887 (Mo.App.1979). Because evidence was admitted without objection or by stipulation, *Woodall*, which dealt with the *admissibility* of the evidence, is inapposite.

1. Unless otherwise noted, all references to statutes are to RSMo 1986.

Nevertheless, we shall attempt to address the issue as it has been presented on appeal in order that the question may be properly resolved by the trial courts on remand.

■ The statutes covering the offenses of driving while intoxicated, § 577.010, and driving with excessive blood alcohol content, § 577.012, state that a chemical analysis of a person's blood, breath, urine or saliva shall be "conducted in accordance with provisions of sections 577.020 to 577.-041." A chemical test must be "performed according to methods approved by the State Division of Health."[2] *§§ 577.020.3* and *577.037.4.* The State Division of Health must approve "satisfactory techniques, devices, equipment or methods to be considered valid under the provisions of sections 577.020 to 577.041." *§ 577.020.4.* The statutes and corresponding regulations establish the foundation which justifies the admission of a chemical analysis for blood alcohol independent of common law rules of evidence.[3]

The present regulations governing the administration of breath tests are found in *19 C.S.R.* 20–30.011 to 20–30.060. Maintenance checks are defined as "[S]tandardized and prescribed procedures used to determine that a breath analyzer is functioning properly and is operating in accordance with the operational procedures established by the Department of Health." *19 C.S.R.* 20–30.011(2)(F). Maintenance checks are required to be performed "at intervals not to exceed 35 days." *19 C.S.R.* 20–30.031(3). The current regulations were adopted in 1988.

Before the adoption of the present regulations, the only procedures required were "periodic calibrations on breath analyzers." *13 C.S.R.* 50–140.040(3)(E). The former regulations did not further define these "periodic" checks. Because the regulations made no requirement of any specific interval or method of maintenance, the courts did not make any such requirement a foundational prerequisite for the admission of the test results. *State v. Bush,* 595 S.W.2d 386, 388–89 (Mo.App.1980).

The 1988 amendment established a specific requirement that the machine must have had a maintenance check by a Type II operator at 35 day intervals. Implicit in the 1988 amendment is that an approved machine that has had a maintenance check within 35 days is capable of giving accurate readings. The wording of *19 C.S.R.* 20–30.031(3) indicates that a Type II operator must perform maintenance checks every 35 days. Reading that part of the regulation in isolation might suggest that if a maintenance check is not made during any 35 day period, a machine will be rendered permanently unusable, regardless of any subsequent maintenance checks. Beside being irrational, such a narrow reading fails to take into account the definition of "maintenance check" found in the 1988 regulations. That definition makes clear that the check is designed to ensure the proper functioning and operation of the machine when a blood alcohol analysis is conducted. Thus, the purpose of the maintenance check requirement is to ensure the reliability of a particular test result. *State v. Litterell,* 800 S.W.2d 7, 11 (Mo.App.1990); *Woodall,* 795 S.W.2d at 420.

If the proponent of the test offers proof that a maintenance check has been performed on the machine within 35 days prior to the test in question, then the proponent has demonstrated compliance with the maintenance check aspect of the regulation since evidence has been produced that the test was performed according to approved techniques and methods on a reliable machine. The foundational prerequisites for admission of test results under both the present and former regulations are: 1) the test was performed by following approved

---

**2.** The *"Division of Health" is now known as the "Department of Health."* The terms are used interchangeably in this opinion.

**3.** None of the cases under consideration involve a claim that blood alcohol concentration tests may *not* be admitted via common law rules of evidence, *e.g.,* expert testimony. The sole issue presented here is what foundation is necessary under the statutes and regulations to admit a blood alcohol concentration analysis in a prosecution under §§ 577.010 and 577.012 and, by implication, in a proceeding to suspend driving privileges pursuant to § 302.500, *et seq..*

techniques and methods of the Division of Health, 2) the operator held a valid permit, and 3) the equipment and devices were approved by the Division. *Stuhr v. Director of Revenue*, 766 S.W.2d 446, 449 (Mo. banc 1989). Of course, the foundational prerequisites are unnecessary where the test result is admitted in evidence without objection or by stipulation.

We turn now to the perceived conflict between *Woodall v. Director of Revenue* and *State v. Litterell.* In *Woodall*, the court held that in order for a chemical analysis of blood or breath to be admissible under §§ 577.026–577.037, adherence to the regulations relating to operation and maintenance of the blood alcohol concentration verifier is required. The record in *Woodall* included an admission and a finding that no maintenance check had been performed within 35 days prior to that test. By the standards discussed above, the court correctly held that the test should not have been admitted in evidence. 795 S.W.2d at 420.

In *Litterell* the defendant was charged with driving while intoxicated pursuant to § 577.010. The defendant objected to the admission of a breath analysis for blood alcohol. The evidence indicated that on the same day and just prior to the time when the machine was applied to defendant, it had undergone a maintenance inspection. However, no maintenance check had been conducted for a period of 56 days prior to the day on which the most recent inspection had occurred. The court considered the question of whether the fact that more than 35 days had expired between the two previous maintenance checks would affect the admissibility of the test. It concluded, as do we, that the accuracy of the machine is not dependent on the performance of maintenance checks every 35 days from the date the machine is put in service. The foundational requirement is met by showing that a maintenance check was done within 35 days prior to the test sought to be admitted. As we read *Litterell*, it is in harmony with *Woodall.*

■ The petitioners suggest that since *Woodall*, the Director cannot make a *sufficient* case in a driver's license suspension hearing under Chapter 302 without proof that the machine used to confirm the blood alcohol concentration had a maintenance check within 35 days prior to the test. That is incorrect. The requirement of proof of compliance with the regulation regarding maintenance checks only becomes an issue if a proper, timely objection is made to the *admission* of the blood alcohol analysis. No objection appears to have been made in any of the cases now before the Court.

The Director argues with equal vigor that since *Litterell*, proof of a maintenance check within 35 days prior to the test is not a foundational prerequisite to admission of the blood alcohol concentration test notwithstanding the 1988 amendment of the regulations. The Director relies on the following language in *Litterell* for his argument:

Our law assumes nevertheless the integrity of the machine when used to test, so that a contention that the machine was not then in proper operating condition can only be validly made by some evidence that suggests that "a malfunction occurred despite adherence by the testing officer to correct methods."

800 S.W.2d at 11, quoting *Collins v. Director of Revenue*, 691 S.W.2d 246, 253 (Mo. banc 1985); *Jannett v. King*, 687 S.W.2d 252, 254 (Mo.App.1985); and *State v. Bush*, 595 S.W.2d at 389. The quotation, standing alone, might lead the reader to conclude that the person challenging the blood alcohol concentration test has the burden to prove a maintenance check had not occurred within 35 days prior to a test. That is an incorrect reading of *Litterell.* There the Department of Revenue proved that a maintenance check had been conducted on the device earlier the same day that the test was administered to the petitioner in that case. Also, the cases cited in *Litterell* and noted above were all decided prior to the 1988 amendment to the regulations defining "maintenance checks" and prescribing that such checks occur "at intervals not to exceed 35 days." The Director's position misapprehends the actual holding of *Litterell.*

As previously noted, it is impossible to dispose of these cases based on the limited

record provided. In six of the cases the record reflects that no objection was made as to the *admissibility* of breathalyzer results. As those cases now stand, there was *sufficient* evidence admitted to establish that each petitioner had a blood alcohol concentration of .13 percent or greater. The trial courts' reliance on *Woodall,* which deals with admissibility of evidence, creates a patent ambiguity as to the reason the trial courts reached their conclusions.[4] These cases must be reversed and remanded so that the trial courts may clarify the record.

■ The seventh case is impossible to resolve for a different reason. In that case there is no transcript of evidence and no stipulation as to what the evidence would be.[5] Both parties informed this Court in oral argument that we have been supplied with all the record that was made at the trial court. The case was decided by an associate circuit judge. Apparently that judge was assigned by the presiding judge to hear the case. *See § 302.535.1.* When assigned to hear cases on the record, associate circuit judges are required to "preserve the record" utilizing approved methods of sound recording or a court reporter. *§§ 478.072* and *512.180.2.* Without any evidentiary record, this Court is unable to determine what evidence was admitted, what evidence was rejected, and whether a sufficient case was made. Neither of the parties can be faulted for failing to make a proper record. Under such circumstances, justice requires that the seventh case also be reversed and remanded to the trial court so that a proper record can be made and presented on appeal. *See Vogel v. Director of Revenue,* 804 S.W.2d 432, 434–35 (Mo.App.1991).

Accordingly, the judgment in each of the seven cases is reversed and the cause re-

manded to the trial court. In the six cases presented on evidence or on stipulation, if the trial courts choose, they may reopen the record to allow a proper objection to be made to the admissibility of the blood alcohol content tests. If a proper objection is made and sustained, the Director should be given an opportunity to present additional evidence to establish a proper foundation. Judgment shall be entered consistent with the evidence before each trial court. In the seventh case, the judgment is reversed and a new trial is ordered at which a record shall be made and a judgment entered consistent with such record. However, nothing contained in this opinion should be construed to suggest that the trial courts may not weigh the credibility of any evidence presented.

ROBERTSON, C.J., and RENDLEN, COVINGTON, BLACKMAR and THOMAS, JJ., concur.

BENTON, J., not sitting.

---

**4.** The petitioners' counsel assured the Court during oral argument that discussions were held off the record that might explain the absence of any objection. However, the Court must decide the case only on the record presented. *Pretti v. Herre,* 403 S.W.2d 568, 569 (Mo.1966).

**5.** On appeal there was an agreed statement of the record made pursuant to Rule 81.13. The statement indicates that evidence was presented

that Dunaway had .13% blood alcohol content. However, the statement does not reflect that Dunaway stipulated to his blood alcohol test results. Also, the statement does not disclose whether an objection was made to the admission of the analysis or, if objection was made, the basis of the objection or the court's ruling on any objection.