**Sless Shaleen RILEY, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. WD 73956.**

Missouri Court of Appeals, Western District.

Oct. 2, 2012.

Danieal H. Miller and Bradley H. Lockenvitz, Columbia, MO, for Appellant.

Chris Koster, Attorney General, Jennifer A. Wideman, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before Special Division: ZEL M. FISCHER, Presiding Judge, and MARK D. PFEIFFER and GARY D. WITT, Judges.

MARK D. PFEIFFER, Judge.

Sless Shaleen Riley ("Riley") appeals from the judgment of the Circuit Court of Johnson County, Missouri ("trial court"), upholding the Director of Revenue's ("Director") administrative revocation of Riley's driving privileges. Riley contends that the trial court's judgment is not supported by substantial evidence of Riley's blood alcohol level because the blood test results relied upon by the trial court were procured in violation of section 577.041 [1]— specifically, although Riley requested the opportunity to consult with an attorney prior to submitting to the chemical test of her blood alcohol content ("BAC"), law enforcement denied her request. While we agree with Riley that evidence of the blood test results would have been inadmissible if objected to on this basis, Riley did not object to admission of the toxicology report, and the trial court was thus authorized to consider and rely upon the BAC results reflected in the toxicology report. Accordingly, we affirm the trial court's judgment.

## Facts and Procedural History [2]

At 1:42 a.m. on July 30, 2008, a deputy sheriff with the Johnson County, Missouri, Sheriff's Department responded to a dispatch that a female was driving erratically

---

1. All statutory references are to RSMo Cum. Supp.2011 (the relevant statutes have not been amended since the 2007 cumulative supplement, the statute in effect at the time of the offense in 2008). *See State v. Carson,* 317 S.W.3d 136, 138 (Mo.App. E.D.2010).

2. We view the evidence in the light most favorable to the trial court's judgment. *White v. Dir. of Revenue,* 321 S.W.3d 298, 302 (Mo. banc 2010).

at the 1000 block of Northwest 40 Highway in Johnson County. Upon arrival, the deputy observed a black passenger vehicle strike both a parked vehicle and a nearby building.

The deputy exited his patrol car and approached the operator of the black passenger vehicle, later identified as Riley. The deputy smelled an odor of intoxicants emitting from the passenger compartment of the vehicle and also observed that Riley's eyes were watery, bloodshot, and glassy. Riley was not cooperative with the deputy and, eventually, the deputy applied pepper spray upon Riley, physically removed her from the vehicle, and cuffed her hands behind her back. Because Riley was combative and confrontational, the deputy did not conduct any standard field sobriety tests.

The deputy placed Riley in the patrol car to transport her to the Sheriff's Department. As the patrol car was leaving the scene, Riley stated that her chest hurt. The deputy drove directly to the Warrensburg Hospital emergency room. When the deputy escorted Riley inside the hospital, she told him that she wanted to contact her attorney. The deputy advised her that he was not going to allow her to contact her attorney at that time because she was at the hospital to receive medical treatment. She told the deputy several times that she wanted to speak to her attorney. The deputy advised her that once she was medically cleared, she could contact her attorney.

Subsequently, the emergency room physician examined Riley and concluded that she was in good medical condition and medically fit to be received into jail. Thereupon, at 3:25 a.m., the deputy read Riley the Implied Consent Warning. He explained to Riley that he wanted to obtain

a blood sample for chemical testing of her BAC while they were at the hospital. Though Riley had previously requested an attorney, the deputy did not give Riley the opportunity to contact an attorney because, as he testified, she did not specifically re-assert her request to speak with an attorney *after* the Implied Consent Warning was read to her. Without the opportunity to receive advice of counsel, Riley acquiesced to the deputy's request for blood testing, and her blood was drawn at the hospital at 4:05 a.m. After the blood draw was processed and packaged, the deputy transported Riley to the Sheriff's Department. Testing reflected in a toxicology report later revealed that Riley's BAC was .119%, in excess of .08%.

At the Sheriff's Department, for the first time during the deputy's encounter with Riley, the deputy read Riley the *Miranda*[3] warnings at 4:50 a.m. She told the deputy that she did not want to speak to him without an attorney present. The deputy then terminated the interview and took Riley to the Johnson County Jail where she was processed for the charges arising out of the early morning incident, including driving while intoxicated.

The deputy's Alcohol Influence Report was submitted to the Missouri Department of Revenue, whereupon the Director administratively revoked Riley's driver's license for excessive BAC. After an administrative hearing, Riley was found to have been arrested upon probable cause to believe she was driving a motor vehicle while the alcohol concentration in her blood was above the limit mandated by section 302.505, and the Director's administrative revocation was upheld.

Riley petitioned for a trial *de novo* with the trial court. During the trial *de novo*,

---

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Director introduced several exhibits[4] into evidence, one of which was the toxicology report reflecting that Riley's BAC at the time of testing was .119%. Riley's counsel did not object to the toxicology report on the basis that her statutory right to counsel had been violated or, for that matter, any other foundational requirement of sections 577.020 to 577.041. Instead, Riley's counsel stipulated to the admission of the toxicology report.

The trial court's judgment upheld the Director's administrative revocation of Riley's driving privileges.[5]

Riley timely appeals.

## Standard of Review

█ The standard of review to be applied to an appeal from a trial court's judgment in a driver's license revocation case under section 302.535 is that of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* (citing *Murphy*, 536 S.W.2d at 32). "In reviewing a particular issue that is contested, the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law." *Id.* at 308. "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.*

## Analysis

In Riley's sole point on appeal, Riley argues that the trial court erred in sustaining the administrative revocation of her driving privileges because the trial court's ruling was not based upon sufficient evidence.

To prevail on a challenge to the Director's administrative revocation of a driver's license pursuant to section 302.505, the Director bore the burden to prove by a preponderance of the evidence that: (1) probable cause existed for the arrest, and (2) Riley's blood alcohol level was eight-hundredths of one percent or more by weight. § 302.505.1; *Grafeman v. Dir. of Revenue*, 344 S.W.3d 861, 863 (Mo. App. W.D.2011). On appeal, Riley does not challenge the probable cause determination. Rather, Riley challenges the sufficiency of competent evidence of her blood alcohol level.

Riley argues that the trial court erred in upholding the administrative revocation of her driving privileges because the trial court's judgment relied upon BAC evidence (*i.e.*, the toxicology report) that was not obtained in compliance with the foundational requirements of sections 577.020 to 577.041. Specifically, Riley argues that this evidence was obtained in violation of her statutory right to consult counsel prior to submitting to a BAC test. Thus, the issues of this appeal are two-fold: (1) was the evidence of Riley's BAC obtained in violation of her statutory right to consult counsel prior to submitting to a BAC test and, thus, inadmissible? and (2) even if this evidence was properly excludable, once admitted without objection, may the evidence

---

4. The Director also introduced the Alcohol Influence Report into evidence. On appeal, Riley does not contest the trial court's ruling admitting the Alcohol Influence Report over Riley's counsel's objection.

5. There was no request for specific findings of fact or conclusions of law by either party. Thus, all facts are considered found in accordance with the trial court's judgment. Rule 73.01(c).

be considered by the trial court in arriving at its judgment?

## Section 577.037

"Section 577.037, which is part of Missouri's Implied Consent Law (sections 577.020 through 577.041), governs the admissibility of chemical test results to establish a driver's [blood alcohol content] in license suspension or revocation proceedings under Chapter 302." *Murphy v. Dir. of Revenue,* 170 S.W.3d 507, 512 (Mo.App. W.D.2005). Section 577.037.1 provides in pertinent part:

> [I]n any license suspension or revocation proceeding pursuant to the provisions of chapter 302 arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, *the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood,* breath, saliva or urine *is admissible in evidence....* If there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.

(Emphasis added.) This broad declaration of admissibility of the BAC test results in proceedings under Chapter 302 is narrowed by section 577.037.4:

> A chemical analysis of a person's breath, blood, saliva or urine, *in order to give*

*rise to the presumption or to have the effect provided for in subsection 1 of this section, shall have been performed as provided in sections 577.020 to 577.041* and in accordance with methods and standards approved by the state department of health and senior services.

(Emphasis added.)

In *Reed v. Director of Revenue,* 184 S.W.3d 564, 568 (Mo. banc 2006), the court concluded: "A failure to comply with the provisions of sections 577.020 to 577.041 means that the chemical analysis is *not admissible* in civil proceedings to suspend or revoke a driver's license." (Emphasis added.)

## Missouri's Implied Consent Law and Impact of the Limited Right to Counsel

■■■ "A driver has no *constitutional* right to speak to an attorney before deciding whether to submit to a chemical test administered in accordance with section 577.041." *Akers v. Dir. of Revenue,* 193 S.W.3d 325, 328 (Mo.App. W.D.2006) (emphasis added). However, Missouri's Implied Consent Law provides a limited *statutory* right to seek the advice of an attorney:[6]

> If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person *shall* be granted twenty minutes in which to attempt to contact an attorney.[7] If upon the completion of the

---

6. "This right to counsel is provided by the civil statute and is not an extension of any constitutional rights recognized by *Miranda....*" *Akers v. Dir. of Revenue,* 193 S.W.3d 325, 328–29 (Mo.App. W.D.2006). "Law enforcement's authority to request a driver to take a chemical test is not conditioned upon that person being advised of his *Miranda* rights or being told that he can consult with an attorney." *Id.*

7. The "twenty-minute" provision in section 577.041.1 "does not ... mandate that arresting officers wait until the expiration of the twenty minutes if the driver has made all the attempts he [or she] wants to make and reaches a decision to refuse to submit to the test before the twenty minutes has elapsed." *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo. App. W.D.1995). "To hold otherwise would give a motorist an absolute right to delay the process for twenty minutes even if the person

twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

§ 577.041.1 (emphasis added).

 "[A] driver invokes this twenty-minute abatement period whether he requests an attorney before or after he is given the Implied Consent Warning." *Davis v. Dir. of Revenue*, 346 S.W.3d 319, 322 (Mo.App. E.D.2011) (citing *Norris v. Dir. of Revenue*, 304 S.W.3d 724, 727 (Mo. banc 2010)). This "abatement period" has also been referenced as a "qualified or conditional consent or refusal." *Kotar v. Dir. of Revenue*, 169 S.W.3d 921, 925 (Mo. App. W.D.2005). Though Missouri law deems that drivers have impliedly consented to chemical testing for BAC upon request of a law enforcement officer acting upon probable cause that the driver was driving while intoxicated, this consent that is implied by law may also be withdrawn by the driver refusing to submit to such BAC testing (with separate statutory consequences). *Brown v. Dir. of Revenue*, 34 S.W.3d 166, 171 (Mo.App. W.D.2000). "A qualified or conditional consent or refusal is considered a refusal, *except* where a driver qualifies a refusal on his having an opportunity to contact an attorney, as provided in § 577.041.1." *Kotar*, 169 S.W.3d at 925. "[T]he right to counsel under section 577.041.1 is qualified and conditional in that the driver is entitled to only twenty minutes to attempt to contact and speak to a lawyer and an adverse consequence results for failing to submit to chemical testing after the twenty minutes has expired." *Akers*, 193 S.W.3d at 329.

█ In summary then, when a law enforcement officer has probable cause to suspect that a driver is driving while intoxicated and requests the driver to submit to a chemical test of his or her BAC, a driver in the State of Missouri has three options: (1) as is implied by law, consent to a chemical test of the driver's BAC; (2) withdraw the implied consent to such testing by refusing to submit to chemical testing of the driver's BAC (subjecting the driver to separate consequences); or, (3) qualify one's consent or refusal by invoking a twenty-minute "abatement period" by requesting to speak to an attorney. In option 2, the consent to chemical testing implied by law is permanently withdrawn by the driver. In option 3, the consent *implied* by law is temporarily withdrawn for the twenty-minute abatement period to permit the driver to consult counsel for the purpose of deciding whether to *expressly* consent or refuse testing.

## Purpose of Section 577.041.1

In *Teson v. Director of Revenue*, our Missouri Supreme Court discussed the purpose of section 577.041.1:

The purpose of the warning provided in section 577.041.1 is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content. Ignoring the internal inconsistency of a system that demands that inebriated persons be given information from which to render an informed decision, the statute demands that a law enforcement officer provide an arrestee with information upon which the arrestee may make a *voluntary, intentional and informed decision as to whether or not to submit to the chemical*

---

ceases attempting to contact a lawyer and indicates exactly what he intends to do." *Id.* However, in this case, Riley was not given the opportunity to contact an attorney after the

Implied Consent Law was read to her, even though she had requested an attorney prior to the reading.

*test.... Uninformed decisions are non-consensual.*[8]

*Teson v. Dir. of Revenue*, 937 S.W.2d 195, 197 (Mo. banc 1996) (emphasis added). More recently, our Supreme Court has stated: "The purpose of section 577.041.1 is to provide the driver with a reasonable opportunity to contact an attorney to make an informed decision[9] as to whether to submit to a chemical test." *Norris v. Dir. of Revenue*, 304 S.W.3d 724, 726–27 (Mo. banc 2010). "[T]he objective of § 557.041.1 is satisfied *if the driver is given the opportunity to attempt to contact an attorney* and the twenty-minute statutory period expires without contact being made or the driver abandons the attempt." *Lorton v. Dir. of Revenue*, 985 S.W.2d 437, 441 (Mo.App. W.D.1999) (emphasis added).

## Impact of the Timing of Requesting Counsel

In *Norris*, the driver requested an attorney after being given the *Miranda* warning but *before* being read the Implied Consent Law. 304 S.W.3d at 726–27. The Director maintained that Norris did not invoke section 577.041.1's twenty-minute rule because Norris did not request an attorney *after* the officer read him the Implied Consent Law. *Id.* The Missouri Supreme Court reasoned that:

> When the driver requests to speak to an attorney after the *Miranda* warning is given but before being read the implied consent law, the driver has not been informed of the consequences of refusing to submit to a chemical test. This

---

[8]. We find the italicized language to be significant. Stating the italicized language another way, our Supreme Court has placed emphasis on the driver's ability, during the statutorily authorized abatement period, to reach an informed decision to either: (1) refuse to submit to a blood test; *or* (2) expressly consent to a blood test. And, if *either* decision is "uninformed," it is "non-consensual." Thus, according to our Supreme Court, the goal of section 577.041.1 is to ensure that, upon the driver's decision to invoke the twenty-minute abatement period that temporarily withdraws his consent to chemical testing of the driver's BAC, either subsequent decision by the driver—refusal or consent—is "voluntary, intentional, and informed." The Director has referred us to dictum from other cases (*Dotzauer v. Dir. of Revenue*, 131 S.W.3d 371 (Mo.App. E.D. 2004); *Crabtree v. Dir. of Revenue*, 65 S.W.3d 557 (Mo.App. W.D.2002); *Douglass v. Wilson*, 10 S.W.3d 199 (Mo.App. W.D. 2000)), suggesting that the mandate of section 577.041.1 is only intended to ensure that a decision to *refuse* a blood test is "voluntary, intentional, and informed," but that it is irrelevant whether or not a decision to *consent* to a blood test is similarly "voluntary, intentional, and informed." Notably, though, the language relied upon by the Director is dictum, and each of the fact patterns of those cases demonstrates that either

the twenty-minute attorney consultation abatement period of section 577.041.1 was complied with, or the drivers in question actually had the opportunity to speak with an attorney prior to making a decision to consent or refuse the requested blood test—a fact pattern inconsistent with our case. Further, dicta from intermediate courts of appeal cannot trump precedent from our Missouri Supreme Court.

[9]. Again, we find it important that the focus of the guidance from our Supreme Court relates to the driver having the opportunity to consult with an attorney to make an informed "decision," not an informed "refusal." Logically, any discussion about "why not" to submit to a chemical test (*i.e.*, refusal) necessarily involves a discussion of "why" to submit to testing (*i.e.*, non-refusal). It is this exchange of information that permits the driver to make a "voluntary, intentional, and informed decision as to whether [non-refusal] or not [refusal] to submit to the chemical test." Stated another way, the "informed decision" that the driver is making during the twenty-minute abatement period is whether to make permanent the driver's temporarily withdrawn consent to chemical BAC testing or, conversely, to choose to *expressly* restore the driver to his pre-abatement period *implied* status: consent to chemical BAC testing.

lack of information makes it difficult for the driver to make an informed decision [as to whether or not to submit to the blood test]. . . .

*Id.* at 727. The Court then specified:

> [W]hen a person has requested an attorney, the 20–minute time period in section 577.041.1 begins immediately after the officer has informed the driver of the implied consent law, *irrespective of whether the driver requested an attorney before or after an officer informs the person of the implied consent law.* To hold otherwise would place an undue burden on the driver, defeat the purpose of the statute, and wholly invalidate a driver's clear and potentially repeated requests to contact an attorney.

*Id.* (citation omitted) (emphasis added). *See also Davis,* 346 S.W.3d at 322 ("Regardless of when the driver requests to contact an attorney, the abatement period always begins after the Implied Consent Warning is given.").

### The Driver's Prejudice

■ Ultimately, the *Norris* Court concluded that Norris's request to speak to an attorney *after* being given the *Miranda* warning but *before* being read the Implied Consent Law was sufficient to invoke the twenty-minute abatement period rule. *Norris,* 304 S.W.3d at 727. Finding that the officer failed to comply with section 577.041.1, the Director bore the burden of proving the driver was not prejudiced

thereby. *Id.* at 726. The *Norris* Court concluded that Norris was, in fact, prejudiced [10] by being denied his statutory right of a reasonable opportunity to contact an attorney for the purpose of making an informed decision about whether or not to submit to a blood test, as provided in section 577.041.1 and, therefore, affirmed the circuit court's judgment reinstating Norris's driving privileges. *Id.* at 727. Notably, the focus of the ruling in *Norris* is not confined to whether or not the driver "refused" or "consented" to the blood test. Rather, the focus is on whether the driver was given the opportunity to consult counsel for the purpose of making an "informed decision" about whether or not to submit to the blood test, consistent with the court-outlined purpose of section 577.041.1 as previously identified by the Supreme Court's ruling in *Teson,* 937 S.W.2d at 197.

The same is true here.

■ At Riley's trial, the deputy's position was that even though Riley asked for an attorney, multiple times, the last time just minutes *before* he read her the Implied Consent Law, her pre-Implied Consent Law request for an attorney did not invoke her right to consult counsel pursuant to section 577.041.1 *after* the Implied Consent Law was read to her because she did not *again* specifically renew her request for an attorney *after* the Implied Consent Law was read.[11] This posi-

---

10. "[T]he driver must be prejudiced by the officer's failure to comply with the statute." *Norris v. Dir. of Revenue,* 304 S.W.3d 724, 726 (Mo. banc 2010). However, "[t]he director bears the burden of proving the driver was *not* prejudiced by the officer's failure to comply with section 577.041.1." *Id.* (citing *Kotar v. Dir. of Revenue,* 169 S.W.3d 921, 926 (Mo. App. W.D.2005)) (emphasis added).

11. As an aside, we note that Riley's failure to renew her request for an attorney after the

Implied Consent Law was read to her does not constitute an "abandonment" of her rights pursuant to section 577.041.1. "Abandonment occurs when the person 'made all the attempts he or she wants to make and reaches a decision . . . before the twenty minutes has elapsed.'" *Snider v. Dir. of Revenue,* 314 S.W.3d 841, 844 (Mo.App. S.D.2010) (quoting *Bacandreas v. Dir. of Revenue,* 99 S.W.3d 497, 500 (Mo.App. E.D.2003)). Here, Riley could not be deemed to have abandoned her statutory right to have the choice to seek

tion is untenable in light of *Norris;* and, much like the holding in *Norris,* we find that Riley was prejudiced by the deputy's denial of her right to consult with an attorney to make a "voluntary, intentional, and informed decision as to whether or not to submit to the chemical test." *Teson,* 937 S.W.2d at 197. Our General Assembly has determined that safeguards must be administered by law enforcement if they are to seek a "voluntary" chemical test of BAC from a driver who has temporarily withdrawn consent to such testing pending the driver's invocation of the twenty-minute attorney consultation abatement period prescribed by law. Failing to comply with those statutory safeguards brings into question the "unequivocal voluntariness" of the driver's decision to refuse or consent to a blood test,[12] thereby constituting prejudice to the driver when the safeguards are ignored.

Accordingly, because the evidence of Riley's BAC was not procured in compliance with the foundational requirements of sections 577.020 to 577.041, it was inadmissible. *See Reed,* 184 S.W.3d at 568.

### May Inadmissible Evidence of Riley's BAC Be Considered When Not Objected To?

■■■ Though the parties agree that it was always Riley's argument at the trial *de novo* that the trial court must not consider the Director's evidence of Riley's BAC that Riley claimed was not procured in compliance with the foundational requirements of sections 577.020 to 577.041, the evidence of Riley's BAC was offered and admitted at the trial *de novo* as follows:

THE COURT: We are back on the record, and it is my understanding that after speaking with counsel that both counsel for [Riley] and [Director] have entered into a stipulation regarding the admittance of certain evidence; is that correct?

[DIRECTOR'S COUNSEL]: That is correct, Your Honor.

THE COURT: Okay. And would you like to put on the record what the agreement is.

[DIRECTOR'S COUNSEL]: Yes, Your Honor. Counsel for—or Petitioner and Respondent—excuse me—have stipulated to Respondent's Exhibit 5, which is the blood sample, being admitted into evidence.

[RILEY'S COUNSEL]: So stipulated.

[DIRECTOR'S COUNSEL]: Respondent's Exhibit 6 which is the evidence of chain of custody listing.

[RILEY'S COUNSEL]: Stipulated.

. . . .

[DIRECTOR'S COUNSEL]: And then Respondent's Exhibit 9, which is the toxicology certified report from the Missouri State Highway Patrol.

[RILEY'S COUNSEL]: Judge, I will stipulate to that as well.

THE COURT: Very well.

Herein lies Riley's problem on appeal. While the parties tend to agree that Riley always argued that the trial court should not be entitled to consider the competency of the BAC evidence, at no point in time *in the record* do we have any suggestion that Riley ever objected to the admission of the

counsel from her attorney (within the statutory period of time) when the deputy did not give her the opportunity to exercise that right in the first place.

**12.** *See White v. Dir. of Revenue,* 255 S.W.3d 571, 580 (Mo.App. S.D.2008) (stating that the goal of section 577.041.1 is to ensure that the driver's decision is voluntary and unequivocal, and the simplest way to be certain of that is to give the driver the period of time mandated by the Legislature to consult with an attorney when requested).

BAC evidence, or made a record of any continuing objection to the competency of the BAC evidence, or even that Riley agreed that the BAC evidence was admissible on chain of custody grounds but not for the substantive content thereof. Plainly and simply, *the record* is silent on the topic of any objection to evidence of Riley's BAC. As the above transcript stipulation reflects, the stipulation was reached after an *off-the-record* discussion between counsel for the parties. Perhaps in this *off-the-record* discussion there may have been discussion about Riley's counsel's objection, continuing objection, or limited agreement to admissibility of the BAC evidence. Even were there such discussion *off the record*, however, a failure to include such discussion *on the record* precludes this court from considering any such discussion. As our Supreme Court has previously explained:

> "[C]ounsel assured the Court during oral argument that discussions were held off the record that might explain the absence of any objection. However, *the Court must decide the case only on the record presented.*"

*Sellenriek v. Dir. of Revenue*, 826 S.W.2d 338, 342 n. 4 (Mo. banc 1992) (emphasis added).

Simply stated, it is well-settled law that once evidence is properly admitted (although it could have been excluded), it may be used for any purpose. *See, e.g., Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 766 (Mo. banc 2010); *Reinert v. Dir. of Revenue*, 894 S.W.2d 162, 164 (Mo. banc 1995), *overruled on other grounds by White*, 321 S.W.3d at 305–06; *Sellenriek*, 826 S.W.2d at 339.

Illustrative of this concept, as applied to BAC evidence, is the decision of the Supreme Court of Missouri in *Reinert*. In *Reinert*, the Director failed to present the foundational prerequisite that the breath

testing machine had been properly maintained. 894 S.W.2d at 164. The Court held:

> Although one of the foundational prerequisites for the admission of the results of a breath alcohol test is proof that the machine has been properly maintained, *the foundational prerequisites are unnecessary where the test result is admitted in evidence without objection. When evidence of one of the issues in the case is admitted without objection, the party against whom it is offered waives any objection to the evidence, and it may be properly considered even if the evidence would have been excluded upon a proper objection.*

*Id.* (emphasis added) (citation omitted).

Another Supreme Court of Missouri decision illustrative of this concept, as applied to BAC evidence, is *Sellenriek*. In *Sellenriek*, the Court held:

> When evidence of one of the issues in the case is admitted without objection, the party against whom it is offered waives any objection to the evidence, and it may be properly considered even if the evidence would be excluded by a proper objection. Similarly, where the results of a breathalyzer test are stipulated, a party may not complain that the breathalyzer test was improperly admitted in evidence.

826 S.W.2d at 339 (internal citation omitted). Later in the opinion, after discussing the foundational requirements of sections 577.020 to 577.041, the Court further held: "Of course, the foundational prerequisites are unnecessary where the test result is admitted in evidence without objection or by stipulation." *Id.* at 341. "[Sections 577.020 to 577.041] and corresponding regulations establish the *foundation* which justifies the *admission* of a chemical analysis for blood alcohol *independent* of com-

mon law rules of evidence." *Id.* at 340 (emphasis added).

The failure to follow the foundational procedural requirements of sections 577.020 to 577.041 does not render the BAC toxicology report *incompetent.* It merely renders the test *inadmissible* upon proper objection.

In reviewing the sufficiency of the evidence challenge by Riley on appeal, it is important to remember that the trial court weighs the probative value of the evidence (not an appellate court) and determines whether the evidence before it is persuasive enough to sustain the Director's suspension of Riley's driving privileges.[13] Although the record before us contains evidence that would have been inadmissible under the foundation requirements of sections 577.020 to 577.041, Riley stipulated to the admissibility of the toxicology report, and Riley does not contest on appeal the admission of the Alcohol Influence Report into evidence at the trial *de novo.* Nothing in the record suggests that the trial court found the contents of the Alcohol Influence Report and the toxicology report to not be credible and reliable evidence of Riley's BAC level at the time she was driving to satisfy the Director's burden of proof of Riley's intoxication. Therefore, Riley's point on appeal is denied.

### Conclusion

The trial court's judgment is supported by substantial evidence to uphold the Director's administrative revocation of Riley's driving privileges. Therefore, the trial court's judgment upholding the Di-

rector's administrative revocation of Riley's driving privileges is affirmed.

ZEL M. FISCHER, Presiding Judge, and GARY D. WITT, Judge, concur.

---

13. For example, if an exhibit was received into evidence without objection, but the trial court determined it was incredible or unreliable, the trial court would not have to give that exhibit any weight. This is because "[a] trial court is free to disbelieve any, all, or none of

[the] evidence." *White,* 321 S.W.3d at 308. But once evidence is admitted without proper objection, the trial court cannot be reversed for relying on it. *Sellenriek,* 826 S.W.2d at 339.