**STATE of Missouri, Appellant,**

v.

**Lloyd A. TRUMBLE, Respondent.**

**No. WD 46004.**

Missouri Court of Appeals,
Western District.

Sept. 29, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Nov. 24, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Mary A. Greer, Pros. Atty., Versailles, for appellant.

Ralph Aubuchon, Asst. Public Defender, Lebanon, for respondent.

Before TURNAGE, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

On July 4, 1991, in response to a report about a small, yellow Ford "driving very careless and reckless, and running people off the road" on Highway 5 in Morgan County, Sgt. Robert Martin, a Missouri State Highway Patrolman found defendant Lloyd A. Trumble passed out in his car. The vehicle and Mr. Trumble were located in a field near the junction of Highway 5 and Route TT. Sgt. Martin described the defendant as unable to stand on his own, confused, with bloodshot eyes and dilated pupils, and his breath smelled of alcohol. There was ample evidence for the officer's

conclusion that the defendant was under the influence of alcohol. Sgt. Martin placed defendant under arrest, gave him the Miranda warning and transported him to the Morgan County Sheriff's Department.

Upon arrival at the Sheriff's Department, defendant was given a breathalyzer test which registered a blood alcohol content of .07 percent. Believing that the "breathalyzer test was not an accurate account of his [defendant] actions" and upon discovering eight small white pills in defendant's possession, Sgt. Martin requested that the defendant take a blood test to determine the presence of any illegal drugs. Defendant consented to the blood test which was administered by a doctor at his clinic in Versailles and submitted to the Missouri Highway Patrol lab in Jefferson City for analysis. The lab result was a blood alcohol content of .22 percent.

Defendant was charged with driving while intoxicated in violation of § 577.010 RSMo (1986). Defendant filed a motion to suppress the results of the blood test arguing since he was not told the test was for alcohol, he was not given the opportunity to refuse the test. The trial court heard arguments on the motion and agreed with the defendant's position and suppressed the blood test result. The state's appeal follows.

The state argues that the trial court erred in suppressing the blood sample since the defendant was under arrest, told of the reasons for the test, and informed of the consequences of a refusal of the test. It contends the sample was obtained in strict compliance with Missouri's "Implied Consent Law" § 577.020 and § 577.041, RSMo (1991). The state argues that defendant both impliedly consented to the test under the statute and actually consented to the blood test when he consented to the breathalyzer test. The defendant claims he was not allowed the "right" to refuse the blood test because he was told the test was for drugs. In effect, the defendant contends his right of refusal is conditioned on the "reasons" the officer is required to give.

■ The admissibility of blood samples retrieved through a warrantless search without consent comports with constitutional due process where defendant has first been arrested. *Schmerber v. California*, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). Missouri responded to *Schmerber*, by enacting the "implied consent" statute. *State v. Ikerman*, 698 S.W.2d 902, 905 (Mo.App.1985). Section 577.020 states in pertinent part:

1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provision of Sections 577.020 to 577.041, a chemical test or tests of his breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while intoxicated or drugged condition.

The Missouri Supreme Court has held that "the provisions of the Missouri statutes fall well within the constitutional framework and standards established by the *Schmerber* decision and, therefore, do not violate substantive due process of law." *Blydenburg v. David*, 413 S.W.2d 284, 289 (Mo. banc 1967).

■ The theory behind the "implied consent law" is "that the use of public streets and highways is a privilege and not a right, and that a motorist by applying for and accepting an operator's license 'impliedly consents' to submission to a chemical analysis of his blood alcohol level when charged with driving while intoxicated." *Gooch v. Spradling*, 523 S.W.2d 861, 865 (Mo.App. 1975); *Ikerman*, 698 S.W.2d at 906. The express language of the § 577.020 is "[a]ny person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to ... a chemical test or tests of his breath, blood, saliva or urine...." § 577.020.1 RSMo (1991). Therefore, under the aegis of *Schmerber*, obtaining blood from an arrestee on probable cause without a warrant

and without actual consent does not offend the constitutional guarantees of due process or Fourth and Fourteenth Amendment right of freedom from unreasonable search and seizure, Fifth Amendment privilege against self incrimination, or a Sixth Amendment right to counsel. *Schmerber,* 384 U.S. at 759–770, 86 S.Ct. at 1829–1836.

However, when the Missouri legislature enacted the implied consent law, it made § 577.020 "subject to" § 577.041, a "refusal" statute. Section 577.041 provides in pertinent part:

1. If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under Section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under Section 577.010 or 577.012. The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to submit to the test may be used against him and that his license may be revoked upon his refusal to take the test.

■ This statute has been interpreted to mean a motorist "has the present, real option either to consent to the test or refuse it." *Gooch,* 523 S.W.2d at 865; *City of St. Joseph v. Johnson,* 539 S.W.2d 784, 786 (Mo.App.1976). On the other hand, the statute provides that if one chooses not to comply with the arresting officer's request, by refusing to take a chemical test, then evidence of that refusal may be admissible in a proceeding against the motorist and further that the motorist's license may be subject to revocation. Section 577.041 provides the statutory requirements which must be satisfied in order to admit an arrestee's refusal into evidence. Therefore, this section is more consistently read as providing a resource for the state in the

prosecution of drunk driving cases rather than creating a "right" for an arrested motorist to refuse the test.

Support for such an interpretation can be found in the legislature's response to this court's holding in *St. Joseph.*[1] In *St. Joseph,* this court held that evidence of a motorist's refusal to permit a chemical test is inadmissible in the prosecution for operating motor vehicles while under the influence of alcohol. *St. Joseph,* 539 S.W.2d at 787. In response to *St. Joseph,* the Missouri legislature added the language "evidence of the refusal shall be admissible in a proceeding under Section 577.010 or 577.012." § 577.041.1 RSMo, (1991).

This position does not grant law enforcement officers unlimited authority to conduct physical intrusions. It simply confirms legislative intent by breathing life into the words "implied consent." Law enforcement officers are expressly limited by § 577.020.2 to no more than two chemical tests arising from the same arrest. Likewise, these tests are carefully regulated by § 577.020.4 which provides that the State Division of Health shall approve of satisfactory techniques, devices, equipment, or methods and establish standards to ascertain the qualifications and competency of individuals conducting the tests. § 577.020.4. Furthermore, law enforcement officers are significantly limited by § 577.041 which states that when a motorist declines to comply with the request for a test, none shall be given.

■ Section 577.041 provides that a "request" for a chemical test shall include the reasons for the request, the fact that a refusal may be used as evidence, and that a refusal may lead to the license revocation. In the present case, Trumble never refused to take a chemical test but agreed to take both the breathalyzer test and the blood test, but now argues his consent to the latter was invalid because he was not told

---

1. In 1987, the General Assembly amended § 577.041 to include the language "evidence of the refusal shall be admissible in a proceeding under § 577.010 or § 577.012." This came as a response to a line of cases which held that it was error to admit such evidence unless there

was other strong evidence of guilt. *See State v. Spain,* 759 S.W.2d 871 (Mo.App.1988); *State v. Bellew,* 586 S.W.2d 461 (Mo.App.1979); *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

it was a test for alcohol. We premise our decision in this case on the conclusion, after a careful review of the record and transcript, that no subterfuge was designed by the officer when he told the defendant that the blood test was for drugs. It is apparent the lab first tested the blood for alcohol and determined that alcohol was the problem, and therefore, did not find it necessary to test for drugs. There is not the slightest suggestion that anything was done in bad faith.

The question here is what is necessary to satisfy the statutory requirement of the officer's explanation of the "reasons" for requesting the test. Does the arrestee have a right to make a knowing refusal?

The undisputed facts of this case are that Trumble consented to a breathalyzer test for alcohol. Trumble then consented to a second test which is expressly provided for by § 577.020 which allows no more than *two* tests of either breath, blood, saliva or urine. Trumble was advised which tests were being requested, that they were to be administered to test him for drugs and alcohol, the use of his refusal as evidence, and the possible revocation of his license upon a refusal. He knew he was being tested for his alcohol consumption and it should be no surprise that the blood was also analyzed for the same substance. We hold that he was properly advised of the reason for both chemical tests when the police told him the first one was for alcohol.

■ This holding is fortified when the statute's purpose is considered. It has as its purpose to determine if the arrestee's abilities to drive are impaired and to the extent he is advised of that fact, the "reason" portion of the statute is satisfied. It is only necessary the defendant be told that the reason for the test is to determine the extent of his impairment to drive a vehicle. If the statute called for a more detailed explanation, an arrestee's refusal could be based on whether he was under the influence of alcohol or drugs, allowing him to refuse one and consent to the other. The statute does not give the arrestee the right to be advised which substance is to be tested and, therefore, to choose whether he will consent to the test whether it is for drugs or alcohol.

The request for a "knowing refusal" has been denied by this court in *Cartwright v. Director of Revenue,* 824 S.W.2d 38 (Mo. App.1991). *See also, Turner v. Director of Revenue,* 829 S.W.2d 671, 673 (Mo.App. 1992). In *Cartwright,* the defendant maintained that he did not remember the conversation with the police officer which led to his refusal of the chemical test. *Id.* at 40. In denying the defendant a right to a knowing refusal, this court held that "[i]t would emasculate these laws which have been enacted for the protection of those who use the highways from intoxicated drivers to hold that a refusal to submit to a chemical test must be knowing." *Id.* Therefore, if one is not allowed the right to a knowing refusal before a license revocation or admission of the refusal into evidence, then it seems quite clear that the "reasons" for the chemical test request need not be so specific as to include each and every substance that could surface upon analysis.

To entertain Trumble's argument is to allow him the choice of the test to which he will consent. Such a right of selection has been expressly rejected by this court in *Kiso v. King,* 691 S.W.2d 374 (Mo.App. 1985), where the court held that "[i]f a choice were allowed, a person could avoid taking a test by demanding one which he knew to be unavailable." *Id.*

For his final point, the defendant claims the evidence did not prove the container into which the blood was collected was "a clean, dry container that has an air-tight, inert stopper," as required by 19 C.S.R. 20–30.070. This complaint was not raised in his motion before the trial court, and the defendant made no objection when the state offered the results of the blood test. Importantly, the trial court, when the matter was raised for the first time at the conclusion of the hearing, ruled that the procedures followed by the state were in compliance with the Department of Health regulations. Under the *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)

standards, we hold there was substantial evidence supporting the trial court's ruling regarding the department of health requirements. The point is denied.

Accordingly, the ruling that the blood test results were inadmissible is reversed and the cause remanded for further proceedings.

All concur.