James Bowles EYBERG, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. 20951.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 15, 1996.

---

Jeremiah W. (Jay) Nixon, Attorney General, James A. Chenault, III, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for appellant.

John A. Clayton, Thomas, Birdsong, Clayton, & Becker, P.C., Rolla, for respondent.

MONTGOMERY, Chief Judge.

The Director of Revenue (Director) suspended the driver's license of James Bowles Eyberg (Petitioner) based on the provisions of § 302.505.[1] Later, Petitioner filed a Petition for Trial De Novo as allowed by § 302.535.

At trial, Petitioner stipulated he was arrested upon probable cause that he was driving a motor vehicle while the alcohol concentration in his blood exceeded .10 percent by weight. The only unstipulated matter centered on whether Petitioner was properly warned as required by § 577.041.1 before he submitted to a chemical test. The circuit court ruled that the Petitioner's breathalyzer test results were inadmissible because he was improperly advised on the consequences of refusing the test and ordered reinstatement of his driving privileges. The Director appeals.

The sole issue on appeal is whether Petitioner received a warning sufficient to allow introduction of the breathalyzer test results in view of the fact that Petitioner did not refuse to take the test.

Petitioner argues that the trial court properly rejected the evidence of his blood alcohol content because he did not receive "a correct implied consent warning." The Director claims that Petitioner was not prejudiced by the warning because he submitted to the breathalyzer test. We agree.

The arresting officer testified that he arrested Petitioner on November 11, 1994, while working a driving while intoxicated spot check on U.S. Highway 63 in Phelps County. The officer administered a breathalyzer test to Petitioner which registered in excess of the legal limit. Prior to the test, the officer read to Petitioner the "Missouri implied consent form." The pertinent language on this form reads that "[i]f you refuse to take the test(s), I must file a sworn affidavit with the Director of Revenue who shall revoke your Drivers License for one year."

Section 577.041.1 provides, in pertinent part:

---

1. Statutory references are to RSMo 1994 unless otherwise indicated.

The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and *that his license shall be immediately revoked upon his refusal to take the test* .... [Upon a refusal,] the arresting officer shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the arrested person and shall take possession of any license to operate a motor vehicle issued by this state which is held by that person.

(Emphasis added.)

Obviously, the warning read to Petitioner conveys the same message as the statutory language except it omitted the word "immediately." Petitioner claims the omission is fatal to the admission of the breathalyzer test results. He suggests the plain language of § 577.037 supports the trial court's decision.

Section 577.037.1 provides, in pertinent part:

Upon the trial of any person ... in any license suspension or revocation proceeding pursuant to the provisions of chapter 302, RSMo, arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence ....

In addition, § 577.037.4 provides, in pertinent part:

A chemical analysis of a person's breath, ... in order to give rise to the presumption or to have the effect provided for in subsection 1 of this section, shall have been performed as provided in sections 577.020 to 577.041 ....

Clearly, *Logan v. Director of Revenue*, 906 S.W.2d 888 (Mo.App.1995), *Bennett v. Director of Revenue*, 889 S.W.2d 166 (Mo.App. 1994), and *Vinson v. Director of Revenue*, 892 S.W.2d 330 (Mo.App.1995), hold that a defective implied consent warning precludes the revocation of a person's driver's license in a § 577.041.4 proceeding (a proceeding available to a person suffering a revocation after refusing a chemical test). However, this case is not a § 577.041.4 proceeding because Petitioner did not refuse the test. Therefore, we agree with the Director that *Mullen v. Director of Revenue*, 891 S.W.2d 562 (Mo. App.1995), dictates an outcome different from the above-mentioned refusal cases.

In *Mullen*, the trial court set aside a revocation because the Petitioner was informed that a refusal to submit to the test "may" result in the immediate revocation of his operator's license rather than the statutory language that refusal "shall" result in immediate revocation. In reversing the trial court's judgment, the court held:

The use of the word "may" instead of "shall" in the notice could potentially be misleading in its implication that the consequences of failing to submit to a test will not necessarily be the suspension/revocation of driving privileges. The harm, if any, in using the word "may" is that it could potentially influence a driver *not to submit to a test* (against his interest) since the consequences of refusal are not believed to be certain. Here, however, petitioner *submitted to the test*. The potential harm of the alleged misleading notice did not occur; petitioner was not prejudiced by the alleged deficiency of the notice.

*Id.* at 563–64 (citations omitted) (footnote omitted).

■ According to *Mullen*, a "less than perfect notice is sufficient to uphold the statutory requirement," *Id.* at 563, when the arrested motorist submits to a chemical test. Here, Petitioner was plainly warned that his license would be revoked if he refused the test. This warning conveyed a certain consequence if the test was refused (unlike the uncertainty in the warning in *Mullen*). Thus, Petitioner chose to avoid revocation, whether it was immediate or later, by submitting to the test. We believe the warning Petitioner received, although not perfect, sufficiently complied with § 577.041.1 to allow introduction of the breathalyzer test. Like *Mullen*, the instant Petitioner suffered no prejudice from omission of the word "immediately" in the warning.

Without regard to *Mullen,* Petitioner asserts that we must follow the plain meaning of the words in § 577.037.1 and .4, i.e., the test is not admissible unless a proper § 577.041.1 warning is given. Petitioner reminds us that the primary rule of statutory construction is to "ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *State v. Kraus,* 530 S.W.2d 684, 685 (Mo. banc 1975).

■ A corollary rule of statutory construction is that statutes relating to the same or similar subject matter are in pari materia and must be construed together. *Vogel v. Director of Revenue,* 804 S.W.2d 432, 434 (Mo.App.1991). Section 577.033 is another statute on the same subject as § 577.041.1. The former statute allows a test to be administered to a person "incapable of refusing to take a test as provided in sections 577.020 to 577.041." The results of such a test are admissible under § 577.037.1 and .4. Plainly the legislature intended that test results under some circumstances are admissible without any prior warning. It follows that a less than perfect warning before a person agrees to take the test does not preclude admission of the test results. As demonstrated by *Logan, Bennett,* and *Vinson,* the strictness of the warning is most important when a person consciously determines to refuse the test.

■ Reading § 577.033 with § 577.041.1 we determine that the legislature intended that the test results from a person submitting to the test are admissible so long as such person was warned in a nonprejudicial manner like the instant Petitioner.

The judgment of the circuit court ordering the Director to reinstate Petitioner's operating license is reversed, and the cause is remanded with directions to reinstate Director's suspension of Petitioner's driving privileges.

CROW, P.J., and SHRUM, J., concur.

