Kenge Anne (Hull) DOUGLASS, Respondent,

v.

Quentin WILSON, Director of Revenue, State of Missouri, Appellant.

No. WD 56957.

Missouri Court of Appeals, Western District.

Jan. 18, 2000.

200

Kenneth M. Hayden, Versailles, for Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Sp. Asst. Atty. Gen., Jefferson City, for Appellant.

Before: SMART, P.J., and ELLIS and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

The Director of Revenue (the Director) appeals from the judgment of the circuit court reinstating the driver's license of the respondent, Kenge Anne Douglass, after it had been administratively suspended for driving while intoxicated (DWI) pursuant to § 302.505.[1]

In his sole point on appeal, the Director claims that the trial court erred in reinstating the respondent's driver's license because the admissible evidence was sufficient to make a *prima facie* case for suspension, which was not rebutted by the respondent. Specifically, he claims that the trial court erred in refusing to admit the respondent's breathalyzer test result, establishing her blood alcohol content (BAC), on the basis that there was no showing that she was given the implied consent warning before the test was administered, as required by § 577.041.1.

We reverse and remand.

### Facts

On the night of January 9, 1998, Shawn Campbell (Campbell), a deputy with the Morgan County Sheriff's Department, observed a blue Ford Bronco with expired plates driving in the opposite direction. He turned his patrol car around and followed the Bronco, which turned off and began to drive down the center of a side road. After Campbell pulled over the Bronco, he identified the respondent as the driver. He smelled an odor of alcohol coming from the car, so he asked the respondent whether she had been drinking. She denied that she had. Nevertheless, Campbell asked her to exit the Bronco in order to conduct several field sobriety tests.

As the respondent opened her door to exit the Bronco, a bottle of beer fell out and broke. The respondent began to cry. Campbell again asked her if she had been drinking that night. This time, she admitted to drinking four to five beers. Still smelling an odor of alcohol, Campbell asked her to submit to several field sobriety tests, including: (1) the "one-leg stand" test, during which the respondent put her foot down at least three times; (2) asking her to count backward, during which she skipped several numbers; and (3) the "walk and turn" test, during which she stopped to balance herself, used her arms for balance, did not touch her heel on one foot to her other foot's toe several times, took an incorrect number of steps, and made an improper turn. As a result of the respondent's performance on these tests, Campbell determined that she was intoxicated and arrested her for DWI.

Campbell transported the respondent to the Morgan County Sheriff's Department, where he requested that she submit to a breathalyzer test. The respondent asked to speak with an attorney and, approximately twelve minutes later, made contact with one, after which she agreed to take the test, which was administered by Officer Ron Witt of the Versailles Police Department. The test revealed that the respondent had a BAC of .16 of one percent.

Following the respondent's arrest, the Director notified her that her driver's license was being suspended under § 302.505. On March 26, 1998, pursuant to § 302.535.1, the respondent filed a petition for a trial *de novo* review of her suspension in the Circuit Court of Morgan County. A hearing was held on January 29, 1999. At the hearing, Officer Witt testified, *inter alia*, that he gave the respondent the implied consent warning of § 577.041 at "0031," or 12:31 a.m., on January 10, 1998. In addition, Trooper William Surface, who observed the breath test of the respondent, was called to testify. The respondent stipulated that Trooper

---

1. All statutory references are to RSMo Supp. 1996, unless otherwise indicated.

Surface used the Department of Health's checklist to conduct the test and that he filled it out in the manner in which he was trained.

After Trooper Surface testified that the breathanalyzer used to measure the respondent's BAC was properly performing under the Department of Health regulations, the Director offered for admission the following exhibits: (1) the checklist, which showed that the implied consent warning was given at "0031"; (2) the test printout, which showed a BAC of .16 and that the test had been administered at "0031"; and (3) the maintenance report for the breathanalyzer used to administer the test. The respondent objected to their admission on the grounds that the evidence did not establish probable cause for her arrest for DWI and that the records did not reflect whether the implied consent warning had been given to her *before* the breath test was administered. Initially, the trial court overruled the objection on the probable cause ground, but sustained it as to the implied consent issue. It subsequently admitted the maintenance report, but not the checklist and test printout. As a result, the trial court found that the Director did not carry its burden to establish a *prima facie* case for suspension, pursuant to § 302.505, and ordered that the respondent's driver's license be reinstated.

This appeal follows.

## Standard of Review

■ Our review of the trial court's judgment reinstating the driver's license of the respondent, after it has been administratively suspended for DWI under § 302.505, is the same as in any other judge-tried case and is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo.1976). *Duffy v. Director of Revenue,* 966 S.W.2d 372, 376 (Mo.App.1998). As such, we must affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

## I.

In his sole point on appeal, the Director claims that the trial court erred in reinstating the respondent's driver's license because the admissible evidence was sufficient to make a *prima facie* case for suspension, which was not rebutted by the respondent. Specifically, he claims that the trial court erred in refusing to admit the respondent's breathalyzer test result, establishing her BAC, on the basis that there was no showing that the respondent was given the implied consent warning prior to the test being administered as required by § 577.041.1. The issue then for us to decide is whether the respondent's BAC test result was admissible and if it was, whether the Director made a *prima facie* case for suspension.

■ Section 302.505 authorizes the suspension or revocation of a driver's license for DWI and provides, in pertinent part, as follows:

1. The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundreths of one percent or more by weight. . . .

Hence, under this statute, the Director makes a *prima facie* case for the suspension of a person's driver's license by establishing by a preponderance of the evidence that: (1) there was probable cause to arrest the driver for DWI, and (2) at the time of the arrest, the driver's BAC was at least .10 of one percent or more by weight. *Barrett v. Director of Revenue,* 963 S.W.2d 717, 719 (Mo.App.1998). "Once [the] Director has established a prima facie case, the burden shifts to the driver to present evidence to rebut the prima facie case by a preponderance of the evidence." *Hurley*

*v. Director of Revenue,* 982 S.W.2d 694, 696 (Mo.App.1998).

## A. Probable Cause to Arrest for DWI

 In determining whether the evidence was sufficient here to make a *prima facie* case for suspension under § 302.505, we first must consider whether the Director met his burden to show that there was probable cause to arrest the respondent for DWI. In this respect, " '[p]robable cause exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been or is being committed.' " *Whitworth v. Director of Revenue,* 990 S.W.2d 115, 118 (Mo.App.1999) (*quoting Kramer v. Director of Revenue,* 924 S.W.2d 308, 310 (Mo.App.1996)). "Whether probable cause existed to arrest the driver is determined 'in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer.' " *Id.* (*quoting Kramer,* 924 S.W.2d at 310).

 The record reflects that the respondent was initially stopped after the deputy sheriff, Campbell, observed her driving down the center of the road with expired plates. Having approached her vehicle, he smelled alcohol and asked her if she had been drinking. Although she first denied that she had, a beer bottle fell to the ground as she exited her vehicle, after which she began crying and admitted that she had drunk several beers. Having exited her vehicle and being some distance from it, Campbell could smell an odor of intoxicants` coming from the respondent. Based on these observations, Campbell administered three field sobriety tests which, in his opinion, the respondent failed. This evidence was sufficient to establish probable cause for the respondent's arrest for DWI, satisfying the first element of the Director's *prima facie* case for suspension under § 302.505. *Halmich v. Director of Revenue,* 967 S.W.2d 693, 695 (Mo.App. 1998).

Having determined that the evidence was sufficient for the Director to satisfy his burden of establishing probable cause for the respondent's arrest for DWI, we turn to the issue of whether the evidence was also sufficient for him to meet his burden of establishing that the respondent was driving a motor vehicle with a BAC of .10 of one percent or more.

## B. Operating Motor Vehicle with BAC of .10 of One Percent or More

To satisfy his burden to establish that the respondent was operating a motor vehicle with .10 of one percent or more, in order to make a *prima facie* case for suspension under § 302.505, the Director sought to admit the result of the respondent's breathalyzer test, to which the respondent objected. The respondent objected on two bases: (1) the evidence was insufficient to establish probable cause to arrest her for DWI so as to require her to submit to a BAC test; and (2) the Director failed to lay a proper foundation for the admission of the test result in that he did not establish that the implied consent warning of § 577.041.1 was read to the respondent prior to the test being given. The objection was sustained by the trial court and the test result excluded on the second basis. Having already determined that the evidence was sufficient here to establish probable cause for arrest of the respondent for DWI, the only question is whether the trial court was correct in excluding the respondent's BAC test result because the respondent was not read the implied consent notice prior to the test being given. With respect to this issue, the Director makes several contentions as to why the trial court erred in excluding the respondent's test result on this basis, including that the implied consent warning of § 577.041.1 is not required where the driver *submits* to the test. Inasmuch as we find that this issue is dispositive of this appeal, we address it alone.

 Section 577.037.1 authorizes, in any license suspension or revocation proceeding pursuant to Chapter 302, the admission of "any chemical analysis of the

[driver's] blood, breath, saliva or urine" to show that he or she was driving a motor vehicle while in an intoxicated condition. To lay a proper foundation for the admission of such evidence, the Director is required to show that (1) the test was performed by following the techniques and methods approved by the Department of Health, (2) by a person possessing a valid permit, and (3) using equipment and devices approved by the Department. § 577.020, RSMo Supp.1998; *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340–41 (Mo. *banc* 1992). The third requirement mandates that, "[i]f timely objection is made to the admission of blood-alcohol test results, the department must prove the machine used in the test had been checked by a Type II permit holder within thirty-five days of the date ... the breathalyzer test was administered," *Lasley v. Director of Revenue*, 954 S.W.2d 327, 331 (Mo. *banc* 1997), as required by 19 C.S.R. 25–30.031(3). The regulations regarding the maintenance checks dictate that compliance is mandatory. *Turcotte v. Director of Revenue*, 829 S.W.2d 494, 496 (Mo.App. 1992); 19 C.S.R. 25–30.031(7)(B); BAC VERIFIER MAINTENANCE REPORT, Form # 5. The record reflects that there was evidence to establish these three requirements of admissibility and that the respondent did not object to the foundation for admission of the test result with respect to these requirements. Her foundational objection was limited to the fact that the required implied consent warning was defective. As to failed compliance with § 577.041.1, § 577.037.4 does require that, for a chemical analysis to be admissible under § 577.037.1, it must be shown to have been performed in accordance with that section.

 The rationale behind the Implied Consent Law is that " 'the use of public streets and highways is a privilege and not a right,' and that by obtaining a license and exercising the privilege of using the public roads, the motorist has impliedly consented to submission to the chemical test." *Bertram v. Director of Revenue*, 930 S.W.2d 7, 9 (Mo.App.1996) (*quoting State v. Trumble*, 844 S.W.2d 22, 23 (Mo.App.1992)). "The purpose of the warning provided in section 577.041.1 is to inform an apparently inebriated driver of the consequences that follow a refusal to consent to a chemical test to determine blood alcohol content." *Teson v. Director of Revenue*, 937 S.W.2d 195, 197 (Mo. *banc* 1996). Given this purpose and the express language of § 577.041.1, which provides, in pertinent part:

> If a person under arrest refuses upon the request of the arresting officer to submit to any test allowed under section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding under section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of the arresting officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of his refusal to take the test may be used against him and that his license shall be immediately revoked upon his refusal to take the test,

we would agree that the warning is to be given prior to the test being administered, otherwise, any *refusal* to submit to the test would not be informed. *Trumble*, 844 S.W.2d at 24. The respondent claimed below, and the trial court agreed, that the implied consent warning of § 577.041.1 was not given to the respondent until after the breathalyzer test was administered and that this violated the statute.

 Even assuming, *arguendo*, that the implied consent warning of § 577.041.1 was given after the breathalyzer test was administered to the respondent, a fact disputed by the Director, this fact would not have invalidated the respondent's test result and rendered it inadmissible in establishing a *prima facie* case for suspension under § 302.505. This is so because the respondent was not prejudiced by the alleged failure to receive the implied consent

warning before the test was administered in that she *submitted* to the test after consulting with an attorney. *Teson,* 937 S.W.2d at 198; *Lorton v. Director of Revenue,* 985 S.W.2d 437, 442–43 (Mo.App. 1999); *Mullen v. Director of Revenue,* 891 S.W.2d 562, 564 (Mo.App.1995).

 The law with respect to implied consent does not require that the driver understand the consequences of *submitting* to a breathalyzer test. *Collins v. Director of Revenue,* 691 S.W.2d 246, 252 (Mo.1985). As to consequences, it only requires that the driver understand the consequences of *refusing to submit, id.,* specifically, that the "evidence of [the driver's] refusal to take the test may be used against [the driver] and that the [driver's] license shall be immediately revoked upon [the driver's] refusal to take the test." § 577.041.1; *see Trumble,* 844 S.W.2d at 24; *Lorton,* 985 S.W.2d at 440. Hence, where, as here, the driver submits to a breathalyzer test after consulting with an attorney, the consequences of a refusal are irrelevant to a determination of whether or not to take the test, resulting in no prejudice to a driver from any defect in giving the implied consent warning of § 577.041.1 and rendering such defect inconsequential to the validity and admissibility of the test result in a Chapter 302 license suspension or revocation proceeding. *Teson,* 937 S.W.2d at 198; *Lorton,* 985 S.W.2d at 442–43; *Eyberg v. Director of Revenue,* 935 S.W.2d 376, 378–79 (Mo.App.1996); *Mullen,* 891 S.W.2d at 564.

Because we find, for the reasons stated, that the breathalyzer test of the respondent was admissible and that it established that, at the time of her arrest, she had a BAC of .10 of one percent or greater, the Director made a *prima facie* case for suspension of her driver's license under § 302.505. Hence, the trial court erred in ordering her license reinstated without any showing by the respondent that the Director's *prima facie* case for suspension was rebutted. *Hurley,* 982 S.W.2d at 696.

**Conclusion**

The judgment of the trial court reinstating the driver's license of the respondent is reversed and the cause is remanded for a further hearing, in accordance with this opinion, to determine whether the respondent can rebut the Director's *prima facie* case for suspension of her driver's license under § 302.505.

SMART, P.J., and ELLIS, J., concur.