

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **BRYAN GOFORTH,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD82604** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **February 11, 2020** |
| **DIRECTOR OF REVENUE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable Jeffrey L. Cox, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Judge and Gary D. Witt, Judge

Bryan Goforth ("Goforth") appeals from a judgment sustaining the Director of Revenue's revocation of Goforth's driving privileges after he refused to submit to a chemical breath test. Goforth argues that the Director of Revenue failed to adduce evidence that he operated a motor vehicle on a public highway, and thus failed to prove he impliedly consented to submit to chemical testing. Finding no error, we affirm.

## Factual and Procedural Background[1]

Shortly after 1:00 a.m. on February 24, 2018, the Belton Police Department received a call from a Taco Bell employee about a man in a black GMC Yukon parked in the restaurant's parking lot. The employee reported the man had previously fallen asleep in his vehicle while in the restaurant's drive-through lane. When a law enforcement officer arrived, the GMC Yukon was parked at the north end of the restaurant's parking lot, with its headlights and taillights on, and the driver's window rolled down, even though it was cold and raining. The officer observed a man, later identified as Goforth, asleep in the driver's seat. The officer smelled a strong odor of intoxicants coming from within the vehicle. Goforth was the vehicle's only occupant. The vehicle was registered to Goforth.

The officer woke Goforth, at which point Goforth explained that he was waiting for his food order from Taco Bell. Goforth denied falling asleep in the restaurant's drive-through lane. The officer asked Goforth where he was coming from three times. Goforth ultimately answered "home." The officer asked Goforth whether he had been drinking. Goforth gave a rambling answer about having a series of drinks, including two glasses of wine and 3-4 beers at Buffalo Wild Wings. The officer observed several indicators of intoxication and arrested Goforth for driving while intoxicated.

Goforth was transported to the Belton jail, where the officer read Goforth the implied consent warning required by section 577.041.2.[2] Goforth refused to submit to a

---

[1]We view the evidence and reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Ayler v. Dir. of Revenue*, 439 S.W.3d 250, 252 n.2 (Mo. App. W.D. 2014) (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 302 (Mo. banc 2010)).

[2]All statutory references are to RSMo 2016 as supplemented through February 24, 2018, unless otherwise indicated.

2

chemical breath test. Goforth was given written notice of the revocation of his license and privilege to drive pursuant to section 302.574.1. At the time of the revocation, Goforth had a valid commercial class A license issued by the state of Missouri.

Pursuant to section 302.574.4, Goforth filed a petition to review the revocation of his license and privilege to drive. During the hearing on Goforth's petition, the Director of Revenue submitted its certified records pertaining to the case, which included the section 302.574.1 revocation notice, the alcohol influence report, a copy of Goforth's Missouri driver's license and the citation he received, the Belton Police Department's incident reports, and Goforth's Missouri driver record. Goforth argued that the trial court should set aside the Director of Revenue's revocation of his license because there was no evidence that he had ever operated a motor vehicle on a public highway. The trial court issued its findings of fact, conclusions of law, and judgment ("Judgment") on February 6, 2019, sustaining the Director of Revenue's revocation of Goforth's license and privilege to drive.

Goforth appeals.

## Standard of Review

We review the trial court's judgment in a license revocation case as we do any other court-tried civil case. *Nix v. Dir. of Revenue*, 573 S.W.3d 156, 159 (Mo. App. W.D. 2019). "'[T]he trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Id.* (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010)). However, "'[w]hen facts are not contested and the issue is one of law, our review is *de novo*, and no deference is given to the trial court's determination.'" *Stiers v. Dir. of*

*Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016) (quoting *Johnson v. Dir. of Revenue*, 411 S.W.3d 878, 881 (Mo. App. S.D. 2013)).

**Analysis**

Goforth argues that the trial court erred in affirming the Director of Revenue's revocation of his license and privilege to drive because the Director of Revenue did not present evidence that he had ever operated a motor vehicle on a public highway. Goforth argues that this evidence is required before his consent to submit to chemical testing can be implied, and that in the absence of implied consent, his refusal to submit to chemical testing could not support revocation of his license.

Section 577.020 addresses when consent is implied for chemical tests to determine the alcohol or drug content of a person's blood. Relevant to this case,[3] section 577.020.1(1) provides:

> 1. *Any person who operates a vehicle upon the public highways of this state . . . shall be deemed to have given consent, subject to the provisions of sections 577.019 to 577.041*, to a chemical test or tests of the person's breath, blood, saliva, or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:
>
> (1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was operating a vehicle . . . while in an intoxicated condition . . . .

(Emphasis added.) Section 577.041.2 provides:

> The request of the officer to submit to any chemical test shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person. If such person was operating a vehicle prior to such

---

[3]Section 577.020.1 also addresses the operation of a vessel or an aircraft, and describes circumstances for detention or stop if operating an aircraft, if under the age of twenty-one, or if involved in a collision or accident resulting in a fatality or serious physical injury.

4

detention, stop, or arrest, he or she shall further be informed that his or her license shall be immediately revoked upon refusal to take the test.

If revocation of a license following the refusal to submit to chemical testing is challenged, section 302.574.4 describes what must be determined at a subsequent hearing. In a case like Goforth's, where there has been an arrest based on the circumstances described in section 577.020.1(1), section 302.574.4 provides:

> At the hearing, the court *shall determine only*:
>
> (1)  Whether the person was arrested or stopped;
> (2)  Whether the officer had:
>       (a)  Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition;
>       . . . ; and
> (3)  Whether the person refused to submit to the test.

(Emphasis added.) *See Howe v. Dir. of Revenue*, 575 S.W.3d 246, 250 (Mo. App. E.D. 2019) (citing section 302.574.4) ("[F]or a circuit court to uphold a driver's license revocation for failure to submit to chemical testing, the Director must show that: (1) the driver was arrested; (2) the officer had probable cause to believe the driver was driving while intoxicated; and (3) the driver refused to submit to the test.").

Goforth admits that the Director of Revenue proved each of these essential elements by a preponderance of the evidence. [Appellant's Brief, pp. 9-10] Goforth contends, however, that the Director of Revenue failed to prove an *additional* essential element--that he had ever operated a vehicle on a public highway. Goforth's argument is directly contradicted, however, by the plain language of section 302.574.4 which provides that in a hearing challenging revocation of a license for refusal to submit to chemical testing, a trial court "shall determine only" the three essential elements identified in that section.

5

We recognize that our courts have consistently construed the third essential element described in section 302.574.4--that a driver refused to submit to chemical testing--to require proof that the refusal was valid. *See, e.g.*, *Howe*, 575 S.W.3d at 251 (holding that "an absolute prerequisite to any finding under Section 302.574.4 that [a driver] refused to submit to [chemical testing] is a corresponding finding . . . that [the driver's] refusal [was] valid"). Validity of refusal requires compliance with the statutory requirements attendant to chemical testing. So, for example, our courts have held that a refusal is not valid where an officer failed to give the implied consent warning required by section 577.041.2. *Id.* at 251-52. And our courts have held that when "a driver conditions a refusal on consulting with an attorney, but is not given a reasonable opportunity to do so, the driver is not deemed to have refused to submit to a chemical test for purposes of license revocation." *Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 637 (Mo. banc 2019) (emphasis omitted) (referring to section 577.041.1's right to attempt to contact an attorney).

Though not precisely articulated as such, Goforth's argument can be fairly read to contend that refusal to submit is not valid unless it is established that a driver impliedly consented to submit to chemical testing by "operat[ing] a vehicle upon the public highways of this state" as provided in section 577.020.1(1). No Missouri case has directly addressed whether a valid refusal to submit requires proof that the driver has ever operated a vehicle upon the state's public highways. Two Missouri cases have indirectly addressed the subject, however.

In *Bertram v. Director of Revenue*, 930 S.W.2d 7, 8 (Mo. App. W.D. 1996), a driver was arrested after a police officer witnessed her driving her vehicle over a curb from a

Wendy's restaurant, through a grass median, and into a Taco Bell lot. Because the driver was not operating her vehicle upon a public highway *at the time of her arrest*, she argued that her refusal to submit to chemical testing could not support suspension of her license. *Id.* We concluded that proof a driver was operating a vehicle on a public highway at the time of their arrest was not required. *Id.* at 9 ("[i]t is not necessary to allege or prove that the vehicle was operated on a public road or highway" at the time of an arrest for driving while intoxicated). We noted, however, that implied consent to submit to chemical testing is generally predicated upon a person's operation of a vehicle on the public highways at some point in time. *Id.* In that context, we noted that Bertram's prior driving record, which established a speeding conviction, was sufficient to show that Bertram had "operated a vehicle on public roadways," and could be treated "as a person who had impliedly consented to submit to a chemical test." *Id.* *Bertram* did not address, however, whether proof of implied consent was required to establish a valid refusal pursuant to section 302.574.4, as that argument was not made by Bertram.

In *Peeler v. Director of Revenue*, 934 S.W.2d 329, 329 (Mo. App. E.D. 1996), a driver was arrested in a parked car in the parking lot of an inn on suspicion of driving while intoxicated. The driver *consented* to chemical testing after being informed that his license would be suspended if he refused to submit. *Id.* The driver's license was suspended after chemical testing established he was intoxicated. *Id.* The driver appealed and argued his consent to submit to chemical testing was not valid because there was no evidence that he had been "driving 'upon the public highways' at the time [he was] required to submit to testing." *Id.* at 330. As was the case in *Bertram*, the Eastern District concluded in *Peeler*

7

that "[w]hether [a] driver operated his vehicle on the public highways [at the time he was arrested] and whether Director proved as much at trial was immaterial." *Id.* In other words, it is not necessary to prove that a driver was "operat[ing] his vehicle on a public highway" at the time the driver was arrested and "advised of the consequences of refusing to submit to a chemical test." *Id.* at 331. *Peeler* did observe, however, that application for and acceptance of a Missouri driver's license is sufficient to support the general finding that a driver has impliedly consented to submit to chemical testing. *Id.* at 330-31. But, as in *Bertram*, because the issue was not raised, *Peeler* did not address whether a valid refusal to submit requires proof that a driver has impliedly consented to submit to chemical testing by operating a vehicle on the public highways at some point in time.

Here, Goforth makes the argument that was not made in either *Bertram* or *Peeler*. Goforth acknowledges that section 577.020.1 "as written does not require proof that he was driving on a public highway at the time of his arrest for driving while intoxicated." [Appellant's Brief, p. 11] Goforth argues, however, that absent some evidence that he *ever* operated a vehicle on the public highways, "consent is not implied and no sanction can be imposed for refusing to submit." [Appellant's Brief, p. 11]

We agree that as a general proposition, refusal to submit is not valid (the third essential element of section 302.574.4) unless the driver has impliedly consented to chemical testing. Pursuant to the plain language of section 577.020.1, consent to submit to chemical testing cannot be implied unless the evidence supports an inference that a driver has ever operated a vehicle on the public highways in Missouri.

8

We disagree, however, with Goforth's contention that the Director of Revenue's evidence failed to support the inference that Goforth's refusal to submit was valid. Substantial evidence permitted the trial court to conclude that Goforth impliedly consented to chemical testing by operating a vehicle on the public highways in this state. First, Goforth had a valid Missouri driver's license at the time of his arrest. The acceptance of a Missouri driving privilege by applying for and receiving a driver's license permits the inference that a driver is assuming all obligations associated with operating a vehicle on the public highways, including impliedly consenting to chemical testing. *See Peeler,* 934 S.W.2d at 330-31. "The theory behind the Implied Consent Law is that the use of the public highways is a privilege, not a right, and 'a motorist by applying for and accepting an operator's license "impliedly consents" to submission to a chemical analysis of his blood alcohol level when charged with driving while intoxicated.'" *Id.* at 331 (emphasis omitted) (quoting *State v. Trumble*, 844 S.W.2d 22, 23 (Mo. App. W.D. 1992)). Stated another way, it is reasonable to infer from a driver's application for and acceptance of a Missouri driver's license that the driver will operate a vehicle on the public highways of Missouri after receipt of that license.

Goforth disagrees with this conclusion. However, even if we disregard that Goforth possessed a valid Missouri driver's license, other substantial evidence permitted the inference that Goforth's refusal was valid because he impliedly consented to submit by operating a vehicle on the public highways in this state. Goforth was found in the driver's seat of a running vehicle which was parked in the parking lot of a fast-food restaurant. The vehicle was registered to Goforth, and Goforth was the vehicle's only occupant. Goforth

9

told the responding officer he arrived at the Taco Bell from his home. Goforth's driver's license showed a residence address in Pevely, Jefferson County, Missouri, more than 250 miles from the point of his arrest in Belton, Jackson County, Missouri.[4] Goforth also told the responding officer that he had been drinking earlier in the evening at a different restaurant. The trial court could reasonably infer from this evidence that Goforth impliedly consented to submit to chemical testing because he operated a vehicle on the public highways in the state of Missouri at some point prior to his arrest.

The trial court did not err in sustaining the Director of Revenue's revocation of Goforth's driver's license and privilege to drive.

Goforth's point on appeal is denied.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

---

[4]"We take judicial notice of the geographical location of cities in the State and the approximate distance between them." *See Maxwell v. City of Hayti*, 985 S.W.2d 920, 922 (Mo. App. S.D. 1999) (citing *Walsh v. Table Rock Asphalt Constr. Co.*, 522 S.W.2d 116, 118 n.1 (Mo. App. 1975)).

10